# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SOURCE HOME ENTERTAINMENT, LLC, *et al.*,[1] | ) Case No. 14-11553 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

---

## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

Paul M. Basta, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         paul.basta@kirkland.com

- and -

David L. Eaton (admitted *pro hac vice*)
Michael W. Weitz (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         david.eaton@kirkland.com
               michael.weitz@kirkland.com

*Counsel for the Debtors*
*and Debtors in Possession*

Robert S. Brady (DE Bar No. 2847)
Pauline K. Morgan (DE Bar No. 3650)
Edmon L. Morton (DE Bar No. 3856)
**YOUNG CONAWAY STARGATT
& TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:         rbrady@ycst.com
               pmorgan@ycst.com
               emorton@ycst.com

Dated: January 12, 2015

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Source Home Entertainment, LLC (8517); Directtou, Inc. (4741); RDS Logistics, LLC (0305); Retail Vision, LLC (2023); Source Interlink Distribution, LLC (3387); Source Interlink International, Inc. (1428); Source Interlink Manufacturing, LLC (7123); and Source Interlink Retail Services, LLC (6967).  The location of the Debtors' corporate headquarters and the service address for all Debtors is:  27500 Riverview Center Boulevard, Suite 400, Bonita Springs, Florida 34134.

**TABLE OF CONTENTS**

**Page**

**ARTICLE I .    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME, AND GOVERNING LAW** .................................................................................. **4**
    A.    Defined Terms ........................................................................................... 4
    B.    Rules of Interpretation ............................................................................. 16
    C.    Computation of Time ............................................................................... 16
    D.    Governing Law ........................................................................................ 16
    E.    Reference to Monetary Figures ................................................................ 16
    F.    Controlling Document .............................................................................. 16

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ............................................. **17**
    A.    Administrative Claims .............................................................................. 17
    B.    Priority Tax Claims .................................................................................. 17
    C.    Professional Fee Claims ........................................................................... 18
    D.    U.S. Trustee Statutory Fees ..................................................................... 18

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** ........... **18**
    A.    Summary of Classifications ...................................................................... 19
    B.    Treatment of Classes of Claims and Interests ........................................... 20
    C.    Special Provision Governing Unimpaired Claims ..................................... 22
    D.    Elimination of Vacant Classes ................................................................. 22
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes .................. 22
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................. 23

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ........................................ **23**
    A.    Substantive Consolidation ........................................................................ 23
    B.    Sources of Consideration for Plan Distributions ....................................... 23
    C.    General Settlement of Claims ................................................................... 24
    D.    Revolving Credit Facility Claims ............................................................. 24
    E.    Post-Effective Date Debtor ...................................................................... 25
    F.    Plan Administrator ................................................................................... 25
    G.    Cancellation of Securities and Agreements .............................................. 28
    H.    Corporate Action ..................................................................................... 29
    I.    Effectuating Documents; Further Transactions ......................................... 29
    J.    Exemption from Certain Taxes and Fees .................................................. 29
    K.    Causes of Action ..................................................................................... 29
    L.    Closing the Chapter 11 Cases .................................................................. 30

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ....................... **30**
    A.    Assumption and Assignment of Executory Contracts and Unexpired Leases ............... 30
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ................. 31
    C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ................. 31
    D.    Purchase Agreement; Assumed Contracts ................................................ 32
    E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements .......... 32
    F.    D&O Policies ........................................................................................... 32
    G.    Indemnification Obligations ..................................................................... 32
    H.    Reservation of Rights ............................................................................... 32

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ............................................. **33**
    A.    Calculation of Amounts to Be Distributed ............................................... 33
    B.    Rights and Powers of the Debtors and the Plan Administrator ................... 33

2

C.       Delivery of Distributions and Undeliverable or Unclaimed Distributions......................................33
D.       Compliance with Tax Requirements/Allocations..............................................35
E.       Claims Paid or Payable by Third Parties........................................................35

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS**............................................................**36**
A.       Resolution of Disputed Claims...................................................................36
B.       Disallowance of Claims.............................................................................37
C.       Amendments to Claims.............................................................................37
D.       No Interest................................................................................................37

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**......................**37**
A.       Compromise and Settlement of Claims, Interests, and Controversies ..........................37
B.       Release of Liens.......................................................................................38
C.       Subordinated Claims................................................................................38
D.       Debtor Release.........................................................................................38
E.       Third Party Release...................................................................................39
F.       Release by Third Party Releasees ..............................................................40
G.       Exculpation.............................................................................................41
H.       Injunction ...............................................................................................41
I.       Parties Unaffected by Releases.................................................................42
J.       Waiver of Statutory Limitations on Releases.............................................42
K.       Setoffs.....................................................................................................42

**ARTICLE IX CONFIRMATION AND SUBSTANTIAL CONSUMMATION OF THE PLAN**......................**43**
A.       Condition Precedent to Confirmation of the Plan.......................................43
B.       Conditions Precedent to Consummation of the Plan...................................43
C.       Waiver of Conditions................................................................................43
D.       Effect of Non-Occurrence of Conditions to the Effective Date ..................43

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**..............................**44**
A.       Modification and Amendments..................................................................44
B.       Effect of Confirmation on Modifications...................................................44
C.       Revocation or Withdrawal of the Plan ......................................................44

**ARTICLE XI RETENTION OF JURISDICTION** ........................................................**44**

**ARTICLE XII MISCELLANEOUS PROVISIONS** .......................................................**46**
A.       Immediate Binding Effect.........................................................................46
B.       Additional Documents..............................................................................46
C.       Dissolution of Committee.........................................................................47
D.       Reservation of Rights...............................................................................47
E.       Successors and Assigns.............................................................................47
F.       Service of Documents...............................................................................47
G.       Term of Injunctions or Stays....................................................................48
H.       Entire Agreement.....................................................................................48
I.       Nonseverability of Plan Provisions...........................................................48
J.       Waiver or Estoppel...................................................................................48

**INTRODUCTION**

The Debtors propose the following *Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. On June 24, 2014, the Bankruptcy Court entered an order [Docket No. 35] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). Reference is made to the Disclosure Statement, filed in connection herewith, for a discussion of the Debtors' history, as well as a summary and analysis of the Plan and certain related matters. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**

**DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Acquired Assets*" has the meaning ascribed to it in the Purchase Agreement; provided, that, for the avoidance of doubt, the Excluded Assets shall not be Acquired Assets.

2.      "*Administrative Claims*" means Claims for the costs and expenses of the administration of the Debtors' Estates pursuant to section 503(b) of the Bankruptcy Code to the extent not previously paid. For the avoidance of doubt, Claims asserting priority under section 503(b)(9) of the Bankruptcy Code are included in the definition of Administrative Claims, and, if Allowed, shall be paid in accordance with the Plan.

3.      "*Administrative Claims Objection Bar Date*" means the first Business Day that is 120 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order.

4.      "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order.

5.      "*Administrative and Priority Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Administrative and Priority Claims Reserve Amount pursuant to Article IV.F.2 hereof.

6.      "*Administrative and Priority Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors and the Term Loan Agent, in consultation with the Committee, as set forth in the Plan Supplement, which amount shall be funded by the Debtors and used by the Plan Administrator for the payment of Priority Claims Allowed after the Effective Date to the extent that such Priority Claims have not been paid in full on or before the Effective Date.

7.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

8.      "*Allowed*" means with respect to Claims: (a) any Claim, proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, that with respect to any Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an

objection is so interposed and the Claim shall have been Allowed by a Final Order; provided, further, that the Plan Administrator may affirmatively determine to allow any Claim described in clause (a) notwithstanding the fact that the period within which an objection may be interposed has not yet expired. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. "Allow" and "Allowing" shall have correlative meanings.

9. "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 547, and 548 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws, which was not conveyed to the Purchaser in connection with the Sale Transaction.

10. "*Ballot*" means a ballot authorized by the Bankruptcy Court pursuant to the Disclosure Statement Order to indicate acceptance or rejection of the Plan and to make an election with respect to the third party release provided by Article VIII.E hereof.

11. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time.

12. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Delaware.

13. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

14. "*Bar Date Order*" means that certain *Order (A) Setting a Bar Date for Filing Proofs of Claim, Including Requests for Payment under Section 503(b)(9) of the Bankruptcy Code, (B) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (C) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date, (D) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (E) Approving Notice of Bar Dates, and (F) Granting Related Relief* [Docket No. 218].

15. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16. "*Cash*" means the legal tender of the United States or the equivalent thereof.

17. "*Causes of Action*" means, subject to the releases, exculpations, and injunctions set forth in the Plan, any claim, cause of action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, which was not conveyed to the Purchaser in connection with the Sale Transaction and which was property of the Debtors or in which the Debtors held rights as of the Effective Date.

18. "*Chapter 11 Cases*" means the jointly administered chapter 11 cases commenced by the Debtors on the Petition Date and styled In re Source Home Entertainment, LLC, Case No. 14-11553 (KG), which are currently pending before the Bankruptcy Court.

19. "*Claim*" means a "claim" (as defined in section 101(a)(5) of the Bankruptcy Code) against a Debtor.

20. "*Claims Bar Date*" means the bar date by which a Proof of Claim must be or must have been Filed, as established by (a) a Final Order of the Bankruptcy Court, including, without limitation, the Bar Date Order, or (b) pursuant to the Plan.

21. "*Claims Objection Bar Date*" means the first Business Day that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court upon a motion Filed by the Plan Administrator served only on the Bankruptcy Rule 2002 service list (which motion to extend the objection deadline shall not be deemed a modification of the Plan).

22. "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

23. "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

24. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code pursuant to that certain *Notice of Appointment of Committee of Unsecured Creditors* filed by the U.S. Trustee on July 10, 2014 [Docket No. 107].

25. "*Committee Members*" means all current and former members of the Committee, including each of the following, in each case solely in their capacity as such: (a) Time Inc. Retail f/k/a Time Warner Retail Sales & Marketing, Inc.; (b) BGI Creditors' Liquidating Trust; (c) Kable Distributors Services, Inc.; (d) Heinrich Bauer USA, LLC; (e) Teamsters Health & Welfare & Pension Funds of Phila. & Vic.; (f) United Wire, Metal & Machine Pension Fund; and (g) Walgreen Co.

26. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

27. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

28. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

29. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30. "*Consolidation*" has the meaning ascribed to it in Article IV.A hereof.

31. "*Consummation*" means the occurrence of the Effective Date.

32. "*Continuing Obligations*" has the meaning ascribed to it in Article IV.D hereof.

33. "*Coral Springs Guaranty*" means that certain Guaranty, dated October 4, 2013, by Source Media in favor of Wells Fargo Bank, N.A. of the obligations arising under the Coral Springs Loan.

34. "*Coral Springs Lender*" means Wells Fargo Bank, N.A., as successor in interest to Wachovia Bank, National Association as lender under the Coral Springs Loan.

35. "*Coral Springs Loan*" means that certain loan agreement and related promissory note, dated as of October 12, 2005, by and between Source Interlink Distribution, LLC and Wells Fargo Bank, N. A., f/k/a Wachovia Bank, National Association ("Wells Fargo"), which is secured by a mortgage and security agreement, dated as of October 12, 2005, by and between Source Interlink Distribution, LLC and Wells Fargo Bank, N.A. on real property located at 4250 Coral Ridge Drive, Coral Springs, Florida.

36.    "*Cure Obligations*" means:  (a) all amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (b) any other obligations required to cure any nonmonetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

37.    "*D&O Policies*" means all insurance policies for directors, members, managers, trustees, and officers' liability maintained by the Debtors' Estates as of the Effective Date, including, without limitation:  (a) that certain Policy No. 01-420-91-27, underwritten by American International Group, Inc.; (b) that certain Policy No. 8237-1061, underwritten by Chubb Specialty Insurance; and (c) that certain Policy No. SISIXFL21137813, underwritten by Starr Indemnity & Liability Company.

38.    "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.D hereof.

39.    "*Debtors*" means, collectively, each of the following:  (a) Source Home Entertainment, LLC; (b) Directtou, Inc.; (c) RDS Logistics, LLC; (d) Retail Vision, LLC; (e) Source Interlink Distribution, LLC; (f) Source Interlink International, Inc.; (g) Source Interlink Manufacturing, LLC; and (h) Source Interlink Retail Services, LLC.

40.    "*DGCL*" shall have the meaning ascribed to it in Article IV.F.4 hereof.

41.    "*Disclosure Statement*" means the *First Amended Disclosure Statement for the Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated January 12, 2015 [Docket No. 569], as amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

42.    "*Disclosure Statement Order*" means the *Order (A) Approving the First Amended Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballots and Notices In Connection Therewith, (D) Establishing the Plan Confirmation Schedule, and (E) Granting Related Relief*, entered on January 12, 2015 [Docket No. 567].

43.    "*Disputed*" means, with respect to any Claim, any Claim that is not yet Allowed.

44.    "*Distribution Record Date*" means the first Business Day that is two (2) Business Days after the Confirmation Date.

45.    "*Effective Date*" means the date selected by the Debtors which is no later than two (2) Business Days after the date on which:  (a) the Confirmation Date has occurred; (b) no stay of the Confirmation Order is in effect; and (c) all conditions precedent specified in Article IX of the Plan have been satisfied or waived.

46.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

47.    "*Estate*" means, as to each Debtor, the estate created for such Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code.

48.    "*Exculpated Parties*" means, collectively:  (a) the Released Parties; and (b) the Committee and the Committee Members and each of the Committee's agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case solely in their capacity as such.

49.    "*Exculpation*" means the exculpation provision set forth in Article VIII.G hereof.

50.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

51.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Effective Date.

52.   "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent.

53.   "*Final Cash Collateral Order*" means the *Final Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Secured Parties, and (C) Granting Related Relief*, entered on July 22, 2014 [Docket No. 162].

54.   "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended from time to time, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

55.   "*General Unsecured Claim*" means any unsecured Claim other than an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a Revolving Credit Facility Claim, a Term Loan Claim, a Term Loan Deficiency Claim, an Intercompany Claim, and a Section 510(b) Claim; provided, that no Third Party Releasee shall be deemed to be a Holder of a General Unsecured Claim for purposes of receiving a distribution as a Holder of a Class 5 Claim under Article III.B.3 hereof.

56.   "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

57.   "*GUC Administration Costs*" means the costs and expenses—including those related to the GUC Administration Oversight Committee, accounting, claims reconciliation, settlement, compromise, and objections, together with the reasonable fees and expenses payable to the Plan Administrator, professionals, independent contractors, and other third parties in connection therewith—incurred on and after the Effective Date in connection with the administration of General Unsecured Claims under the Plan.  For the avoidance of doubt, (i) GUC Administration Costs shall be paid from the GUC Reserve only, and (ii) the costs and expenses incurred on and after the Effective Date in connection with the distribution of funds (meaning the administrative costs, materials, and postage) from the GUC Reserve on account of Allowed General Unsecured Claims held by Participating GUC Holders shall not constitute GUC Administration Costs, but will be paid from the Post-Effective Date Debtor Reserve.

58.   "*GUC Administration Oversight Committee*" shall have the meaning ascribed to it in Article IV.F.3.(b) hereof.

59.   "*GUC Funding Election*" means the Third Party Releasees' right to elect not to fund the GUC Reserve Amount if and only if the Non-Participating GUC Holders include any of the Requisite Creditors, which election must be exercised no later than one Business Day prior to the start of the Confirmation Hearing by written notice to counsel for the Committee and counsel for the Debtors; provided, that the Third Party Releasees shall not include the Revolving Credit Facility Agent, the Revolving Lenders, the Media Revolving Credit Facility Agent, the Media Revolving Lenders, or the Coral Springs Lender for purposes of the GUC Funding Election.

60.   "*GUC Reserve*" means a separate, segregated account to be established and maintained by the Plan Administrator and funded with the GUC Reserve Amount pursuant to Article IV.F.3.(a) hereof.  For the avoidance of doubt, Cash distributions from the GUC Reserve to Participating GUC Holders on account of Allowed General Unsecured Claims pursuant to Article III.B.5.(b).(i) hereof shall be net of GUC Administration Costs.

61.   "*GUC Reserve Amount*" means Cash in an amount of $4.5 million, which amount shall be funded from the GUC Reserve Funding Source on the Effective Date and used by the Plan Administrator in accordance with Article IV.F.3 hereof; provided, that such amount, and any obligation to fund such amount, shall be reduced by the Pro Rata share of Allowed General Unsecured Claims held by Non-Participating GUC Holders pursuant to Article IV.F.3.(a) hereof.

62. "*GUC Reserve Funding Source*" means, Cash collateral of the Debtors' Estates and/or Cash provided by one or more of the Third Party Releasees (other than the Revolving Credit Facility Agent, the Revolving Lenders, the Media Revolving Credit Facility Agent, the Media Revolving Lenders, or the Coral Springs Lender), to be determined at the election of the Third Party Releasees (other than the Revolving Credit Facility Agent, the Revolving Lenders, the Media Revolving Credit Facility Agent, the Media Revolving Lenders, or the Coral Springs Lender), which election shall be subject to the Debtors' and Committee's consent, in an amount equal to the GUC Reserve Amount.

63. "*Holder*" means any Entity holding a Claim or an Interest.

64. "*Holdings*" means Source Home Entertainment, LLC, a Debtor in the Chapter 11 Cases.

65. "*Holdings Interests*" means all Interests in Holdings.

66. "*Impaired*" means, with respect to a Claim or Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

67. "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place whether in the bylaws, certificates of incorporation or formation, other formation documents, board resolutions, or employment contracts for the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates.

68. "*Initial Distribution Date*" means the date on which the Debtors or the Plan Administrator make initial distributions to Holders of Allowed Claims pursuant to the Plan.

69. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

70. "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor other than Holdings Interests.

71. "*Intercreditor Agreements*" means any agreements by and among the Revolving Lenders, Term Loan Lenders, and any of the Debtors' creditors and other related parties that set forth the various lien positions and the rights and liabilities of each such creditor, including but not limited to that certain Intercreditor Agreement, dated as of October 4, 2013, by and among the Debtors, the Revolving Credit Facility Agent, and the Term Loan Agent.

72. "*Interest*" means any interest, equity, or share in the Debtors, including all options, warrants, or other rights to obtain such an interest or share in such Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising therefrom.

73. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

74. "*Letters of Credit*" means those certain outstanding letters of credit issued pursuant to the Revolving Credit Documents.

75. "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

76. "*LLC Agreement*" means that certain limited liability company agreement of Holdings, dated as of October 4, 2013.

77. "*Local Bankruptcy Rules*" means the local rules of bankruptcy practice and procedure of the United States Bankruptcy Court for the District of Delaware.

78. "*Media First Lien Term Lenders*" means each Lender (as defined in the Media First Lien Term Loan Agreement) that is a party to the Media First Lien Term Loan Agreement.

79. "*Media First Lien Term Loan Agent*" means Cortland Capital Market Services LLC, as administrative agent and collateral agent for the Media First Lien Term Lenders under the Media First Lien Term Loan Agreement.

80. "*Media First Lien Term Loan Agreement*" means that certain First Lien Term Loan Agreement, dated as of October 4, 2013, by and among Source Interlink Companies, Inc., as borrower, certain subsidiaries of the borrower, as guarantors, the Media First Lien Term Lenders, and the Media First Lien Term Facility Agent.

81. "*Media Interest*" means any interest, equity or share in Source Media Holdco LLC, including all options, warrants or other rights to obtain such an interest or share in Source Media Holdco LLC, whether or not certificated, transferable, preferred, common, voting or denominated "stock" or a similar security, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising therefrom.

82. "*Media Revolving Credit Agreement*" means that certain Amended and Restated Revolving Credit Agreement, dated as of October 4, 2013, by and among Source Interlink Companies, Inc., Source Interlink Media, LLC, Source Media Innovations, LLC, LML Internet Solutions LLC, Grind Media, LLC, Motor Trend Auto Shows, LLC, Automotive.com, LLC, Enthusiast Media Subscription Company, Inc., Source Media Ventures, LLC, CarDomain Network, Inc., Source Interlink Magazines, LLC and Canoe & Kayak, Inc., as borrowers, certain subsidiaries of the borrowers, as guarantors, the Media Revolving Lenders, Wells Fargo Bank, National Association, as lead arranger and book runner, and the Media Revolving Credit Facility Agent.

83. "*Media Revolving Credit Facility Agent*" means Wells Fargo Capital Finance, LLC, as administrative agent and collateral agent for the Media Revolving Lenders.

84. "*Media Revolving Lenders*" means each Lender (as defined in the Media Revolving Credit Agreement) that is a party to the Media Revolving Credit Agreement.

85. "*Media Second Lien Term Lenders*" means each Lender (as defined in the Media Second Lien Term Loan Agreement) that is a party to the Media Second Lien Term Loan Agreement.

86. "*Media Second Lien Term Loan Agent*" means Cortland Capital Market Services LLC, as administrative agent and collateral agent for the Media Second Lien Term Lenders under the Media Second Lien Term Loan Agreement.

87. "*Media Second Lien Term Loan Agreement*" means that certain Second Lien Term Loan Agreement, dated as of October 4, 2013, by and among Source Interlink Companies, Inc., as borrower, certain subsidiaries of the borrower, as guarantors, the Media Second Lien Term Lenders, and the Media Second Lien Term Facility Agent.

88. "*Non-Participating GUC Holder*" means any Holder of Class 5 Claim that exercises its right to opt out of the third party releases provided by Article VIII.E hereof by checking the box on a Ballot and returning such Ballot in accordance with the Disclosure Statement Order.

89. "*Notice and Claims Agent*" means Kurtzman Carson Consultants LLC, in its capacity as notice and claims agent and administrative advisor for the Debtors' Estates pursuant to 28 U.S.C. § 156(c).

90. "*Other Priority Claim*" means a Claim asserting a priority described in section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; (b) a Professional Fee Claim; and (c) a Priority Tax Claim.

91. "*Other Secured Claim*" means a Secured Claim, including a Secured Tax Claim, other than a Revolving Credit Facility Claim or a Term Loan Claim.

92. "*Participating GUC Holder*" means any Holder of Class 5 Claim that does not exercise its right to opt out of the third party release provided by Article VIII.E hereof by checking the box on a Ballot and returning such Ballot in accordance with the Disclosure Statement Order.

93. "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

94. "*Petition Date*" means June 23, 2014, the date on which the Debtors commenced the Chapter 11 Cases.

95. "*Plan*" means this *Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or otherwise modified from time to time, including the Plan Supplement, which is incorporated in the Plan by reference and made part of this Plan as if set forth in the Plan.

96. "*Plan Administrator*" means Joshua Korsower, Stephen Dubé, or such other Person designated by the Debtors, in consultation and with the consent of the Term Loan Agent and the Committee, before the Confirmation Hearing.

97. "*Plan Administrator Agreement*" means the agreement governing, among other things, the retention and duties of the Plan Administrator as described in Article IV.F hereof, which shall be in form and substance materially consistent with the Plan and included as an exhibit to the Plan Supplement.

98. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least 14 days prior to the Confirmation Hearing, as amended, supplemented, or otherwise modified from time to time with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) a list of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan, and as may be amended by the Debtors in accordance with the Plan prior to the Effective Date; (b) a schedule of retained Causes of Action; (c) a form of the Plan Administrator Agreement; and (d) the amount of the Administrative and Priority Claims Reserve and Post-Effective Date Debtor Reserve.

99. "*Post-Effective Date Debtor*" means Holdings, on and after the Effective Date.

100. "*Post-Effective Date Debtor Assets*" means: (a) the Post-Effective Date Debtor Reserve; (b) the Administrative and Priority Claims Reserve; (c) the Professional Fee Escrow; (d) the GUC Reserve; (e) the D&O Policies; (f) the LLC Agreement; (g) the Post-Effective Date Debtor Causes of Action; (h) the Debtors' rights under the Purchase Agreement, including all rights of recovery under the Purchase Agreement and any ancillary agreements among the Debtors and the Purchaser; and (i) any other remaining assets of the Debtors' Estates after giving effect to the explicit terms of the Plan.

101. "*Post-Effective Date Debtor Cash Distribution*" means the distribution of Cash to the Post-Effective Date Debtor in accordance with Article IV.E and Article IV.F hereof in an amount to be determined by the Debtors and the Term Loan Agent as set forth in the Plan Supplement, which distribution shall occur on the Effective Date.

102. "*Post-Effective Date Debtor Causes of Action*" means the Causes of Action that are not waived, relinquished, exculpated, released, compromised, or settled under the Plan. For the avoidance of doubt, the Post-Effective Date Debtor Causes of Action shall not include any Avoidance Actions.

103. "*Post-Effective Date Debtor Distribution*" means distribution of the Post-Effective Date Debtor Assets on the Effective Date in accordance with Article IV.E and Article IV.F hereof.

104. "*Post-Effective Date Debtor Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Post-Effective Date Debtor Cash Distribution pursuant to Article IV.E and Article IV.F hereof.

105. "*Priority Claims*" means, collectively: (a) Administrative Claims; (b) Priority Tax Claims; (c) Other Priority Claims; and (d) Other Secured Claims.

106. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

107. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan; provided, that for purposes of determining the Pro Rata share of the GUC Reserve—including under Art. III.B.5.(i) hereof—the proportion of an Allowed Class 5 Claim shall be compared to the aggregate amount of Allowed Class 5 Claims of Participating GUC Holders only.

108. "*Professional*" means any entity retained in the Chapter 11 Cases in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 326, 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

109. "*Professional Fee Claims*" mean all Claims for accrued fees and expenses (including success fees) for services rendered and expenses incurred by a Professional from the Petition Date through and including the Effective Date to the extent such fees and expenses have not been paid or are not disallowed pursuant to an order of the Bankruptcy Court and regardless of whether a fee application has been filed for such fees and expenses.

110. "*Professional Fee Claims Estimate*" means the amount of Professional Fee Claims that are estimated by each applicable Professional in good faith to be accrued but unpaid as of the Effective Date.

111. "*Professional Fee Escrow*" means one or more interest-bearing escrow accounts to be funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Claims Estimate.

112. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

113. "*Purchase Agreement*" means that certain Asset Purchase Agreement by and among the Debtors and the Purchaser, dated as of June 22, 2014 [Docket No. 319], as amended, supplemented, or modified from time to time.

114. "*Purchaser*" means Cortland Capital Market Services LLC, together with its successors and permitted assigns.

115. "*Released Parties*" means:  (a) each Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the Post-Effective Date Debtor; (d) each Entity that holds Holdings Interests, and each such Entity's affiliated funds and any Entity that has a direct or indirect interest in any of the foregoing Entities; (e) the Term Loan Lenders and the Term Loan Agent; (f) the Revolving Lenders (solely in their respective capacities as Revolving Lenders under the Revolving Credit Agreement) and the Revolving Credit Facility Agent (solely in its capacity as Revolving Credit Facility Agent under the Revolving Credit Agreement); and (g) each of the foregoing Entities' respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such; provided, that as a condition to receiving or enforcing any release granted pursuant to Article VIII.D or Article VIII.E hereof, each Released Party and its Affiliates shall release or be deemed to have released the Estates and the Debtors for any and all Claims or Causes of Action arising from or related to their relationship with the Debtors, but not, for the avoidance of doubt, Professional Fee Claims; provided, further, that each of the Term Loan Lenders, the Term Loan Agent, the Revolving Credit Facility Agent, and the Revolving Lenders shall be released or deemed to be released from any obligation to pay or otherwise fund Professional Fee Claims or other Carve-Out expenses (as defined in the Final Cash Collateral Order).  For the avoidance of doubt, and notwithstanding anything herein to the contrary, in no event shall an Entity that checks the box on the Ballot and returns such Ballot in accordance with the Disclosure Statement Order to opt out of the third party releases provided by Article VIII.E hereof be a Released Party.

116.  "*Releasing Parties*" means:  (a) the Released Parties; (b) all Holders of Claims who are deemed to accept the Plan; (c) with respect to any other Entities, Holders of Claims entitled to vote to accept or reject the Plan that do not affirmatively opt out of the third party release provided by Article VIII.E hereof pursuant to a duly executed Ballot; (d) the Committee; and (e) with respect to each of the foregoing Entities, their respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; provided, that, notwithstanding anything contained herein to the contrary, in no event shall an Entity that checks the box on the Ballot and returns such Ballot in accordance with the Disclosure Statement Order to opt out of the third party release provided by Article VIII.E be a Releasing Party.  Notwithstanding the foregoing and for the avoidance of doubt, the Affiliates and subsidiaries of each Revolving Lender and Revolving Credit Facility Agent, including without limitation, Wells Fargo Bank, N.A., as the Coral Springs Lender and the provider of certain cash management services to Debtors and the Post-Effective Date Debtor, are not releasing any third parties in any other capacity other than as provided in Article VIII.E.

117.  "*Requisite Creditors*" means those creditors that have been selected by the Debtors, the Term Loan Agent, Source Media, and the Committee for purposes of the GUC Funding Election.

118.  "*Retained Actions*" means all claims, causes of action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Estate may hold against any Entity, including (a) claims and causes of action brought prior to the Effective Date, (b) claims and causes of action against any Entities for failure to pay for products or services provided or rendered by any of the Debtors, (c) claims and causes of action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, including claims against third parties for infringement of any such intellectual property rights or other misuse of such intellectual property, (d) claims and causes of action seeking the recovery of any of the Debtors' accounts receivable or other receivables or rights to payment created or arising in connection with any of the Debtors' businesses, including claim overpayments and tax refunds, and (e) Avoidance Actions.

119.  "*Revolving Cash Reserve*" means the Cash that collateralizes the Debtors' obligations under the Revolving Credit Documents.  As of the Petition Date, the amount of the Revolving Cash Reserve was approximately $18.5 million.

120.  "*Revolving Credit Agreement*" means that certain Amended and Restated Revolving Credit Agreement, dated as of October 4, 2013, as amended by Amendment No. 1 to Amended and Restated Revolving Credit Agreement, dated as of January 31, 2014, by and between the Debtors, the Revolving Lenders, Wells Fargo Bank, National Association, as lead arranger and book runner, and the Revolving Credit Facility Agent.

121.  "*Revolving Credit Documents*" means, collectively, the Revolving Credit Agreement, each other Credit Document (as defined in the Revolving Credit Agreement), and all other agreements, documents, and instruments delivered or entered into in connection therewith (including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents).

122.  "*Revolving Credit Facility Agent*" means Wells Fargo Capital Finance, as administrative agent and collateral agent for the Revolving Lenders.

123.  "*Revolving Credit Facility Claims*" means any Claim arising under, derived from, based upon, or related to the Revolving Credit Documents, including any Claim in respect of the Letters of Credit.

124.  "*Revolving Lenders*" means each Lender (as defined in the Revolving Credit Agreement) that is a party to the Revolving Credit Agreement.

125.  "*Sale Transaction*" means that certain transaction between the Debtors and the Purchaser as set forth in the Purchase Agreement and the *Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Purchaser, (B) Authorizing the Sale of Certain of the Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief*, entered on September 19, 2014 [Docket No. 319].

126. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

127. "*Section 510(b) Claims*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

128. "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan or a Final Order as a Secured Claim.

129. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

130. "*Solicitation Date*" means the date upon which the Debtors commence the solicitation process in accordance with the Disclosure Statement Order.

131. "*Solicitation Procedures*" means that form of solicitation procedures approved by and attached as an exhibit to the Disclosure Statement Order.

132. "*Subsequent Distribution Date*" means the date following the Initial Distribution Date on which the Plan Administrator in its reasonable discretion elects to make distributions to Holders of Allowed Claims pursuant to the Plan.

133. "*Term Loan Agent*" means Cortland Capital Market Services LLC, as administrative agent and collateral agent for the Term Loan Lenders under the Term Loan Facility.

134. "*Term Loan Agreement*" means that certain Term Loan Agreement, dated as of October 4, 2013, by and between the Debtors, the Term Loan Agent, and the Term Loan Lenders, as amended, supplemented or otherwise modified from time to time.

135. "*Term Loan Cash Payment*" means all Cash owned by the Estates on and after the Effective Date after giving effect to: (a) Cash transferred to the Professional Fee Escrow in accordance with Article II.C.1 hereof; (b) Cash transferred to the Administrative and Priority Claims Reserve in accordance with Article IV.F.2 hereof; (c) Cash transferred to the Post-Effective Date Debtor Reserve in accordance with Article IV.E hereof; and (d) Cash transferred to the GUC Reserve in accordance with Article IV.F.3.(a) hereof, as applicable. For the avoidance of doubt, the Term Loan Cash Payment shall include the amounts, if any, remaining in (w) the Revolving Cash Reserve following the termination of the Continuing Obligations in accordance with Article IV.D hereof, (x) the Professional Fee Escrow following the payment of all Allowed Professional Fee Claims, (y) the Administrative and Priority Claims Reserve following the payment, satisfaction, settlement, treatment, or other resolution of all Allowed Priority Claims, and (z) the Post-Effective Date Debtor Reserve following the dissolution of the Post-Effective Date Debtor.

136. "*Term Loan Claim*" means any Claim arising under, derived from, based upon, or related to the Term Loan Documents, except to the extent constituting the Term Loan Deficiency Claim or an Administrative Claim.

137. "*Term Loan Deficiency Claim*" means, with respect to the Term Loan Facility, any portion of the obligations arising under, derived from, based upon, or related to the Term Loan Documents that neither constitutes an Administrative Claim nor is satisfied by the Term Loan Lender Distribution. For the avoidance of doubt, the Term Loan Deficiency Claim, if any, shall be deemed waived and shall not be treated as a General Unsecured Claim.

138. "*Term Loan Documents*" means, collectively, the Term Loan Agreement, each other Credit Document (as defined in the Term Loan Agreement), and all other agreements, documents, and instruments delivered or entered into in connection therewith (including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents).

139. "*Term Loan Facility*" means the loan facilities provided pursuant to the Term Loan Agreement.

140. "*Term Loan Lender Assets*" means the Term Loan Cash Payment and the assets of the Debtors or of the Estates (other than Cash existing on the Effective Date) in which the Term Loan Lenders or the Term Loan Agent hold a perfected security interest, including, without limitation, the Post-Effective Date Debtor Causes of Action.

141. "*Term Loan Lender Distribution*" means the distribution of the Term Loan Lender Assets to Holders of Allowed Term Loan Claims in accordance with Article III.B.4 hereof. For the avoidance of doubt, the amount of the Term Loan Lender Distribution shall not exceed the aggregate amount of the Allowed Term Loan Claims.

142. "*Term Loan Lenders*" means each Lender (as defined in the Term Loan Agreement) that is a party to the Term Loan Agreement.

143. "*Third Party Releasees*" means (a) the Revolving Credit Facility Agent (solely in such capacity), (b) the Revolving Lenders (solely in such capacity), (c) the Term Loan Agent, (d) the Term Loan Lenders, (e) the parties holding, or controlling the holders of, the Interests, (f) the parties holding, or controlling the holders of, the Media Interests, (g) the past and present directors and officers of the Debtors, (h) the Media Revolving Lenders (solely in such capacity), (i) the Media Revolving Credit Facility Agent (solely in such capacity), (j) the Media First Lien Term Lenders, (k) the Media First Lien Term Loan Agent, (l) the Media Second Lien Term Lenders, (m) the Media Second Lien Term Loan Agent, (n) TEN: The Enthusiast Network Holding Co., LLC (f/k/a Source Media Holdco LLC), TEN: The Enthusiast Network, Inc. (f/k/a Source Interlink Companies, Inc.), TEN: The Enthusiast Network, LLC (f/k/a Source Interlink Media, LLC), TEN: The Enthusiast Network Innovations, LLC (f/k/a Source Media Innovations, LLC), LML Internet Solutions LLC, Grind Media, LLC, Motor Trend Auto Shows, LLC, Automotive.com, LLC, Enthusiast Media Subscription Company, Inc., TEN: The Enthusiast Network Ventures, LLC (f/k/a Source Media Ventures, LLC), CarDomain Network, Inc., TEN: The Enthusiast Network Magazines, LLC (f/k/a Source Interlink Magazines, LLC), and Canoe & Kayak, Inc. (collectively, "Source Media"), (o) the past and present directors and officers of Source Media, and (p) the Coral Springs Lender; provided, however, that the Coral Springs Lender shall not be a Third Party Releasee unless it waives its General Unsecured Claim related to the Coral Springs Loan, which waiver shall be evidenced by a written notice delivered to counsel for the Committee and counsel for the Debtors on or before the voting deadline set forth in the Disclosure Statement Order.

144. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

145. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

146. "*United States*" means the United States of America and its agencies.

147. "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

148. "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

149. "*Wind Down*" means the wind down and dissolution of the Debtors' Estates following the Effective Date as set forth in Article IV.F.5 hereof.

B.      *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference in the Plan to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented from time to time; (4) unless otherwise specified, all references in the Plan to "Articles" are references to Articles hereof or hereto; (5) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (12) any immaterial effectuating provisions may be interpreted by the Debtors or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.

D.      *Governing Law*

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided in the Plan.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

*A.    Administrative Claims*

Subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Plan Administrator agree to less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Plan Administrator shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due) with a Cash distribution from the Administrative and Priority Claims Reserve by the Plan Administrator; (3) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Plan Administrator, as applicable; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that any Administrative Claim that has been assumed by the Purchaser pursuant to the Purchase Agreement shall not be an obligation of the Debtors.

1.    Administrative Claims Bar Date

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order) or as provided by this Article II, unless previously Filed, requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Plan Administrator, or the Post-Effective Date Debtor Assets, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

2.    Administrative and Priority Claims Reserve

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall fund the Administrative and Priority Claims Reserve in Cash as described in Article IV.F.2 hereof.  Any amounts remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Priority Claims shall be transferred to the Term Loan Agent and shall be distributed in accordance with the Plan or, if otherwise agreed in writing by the Term Loan Agent in its sole discretion, allocated among any other reserves contemplated hereunder.  Notwithstanding anything to the contrary herein, neither the Plan Administrator, the Post-Effective Date Debtor, the Term Loan Agent, the Term Loan Lenders, nor any other party in interest shall be obligated to fund the Administrative and Priority Claims Reserve in excess of the amount approved by the Bankruptcy Court under the Confirmation Order —i.e., the Administrative and Priority Claims Reserve Amount.

*B.    Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and, as applicable, the Debtors or the Plan Administrator agree to a less favorable treatment or has been paid by any applicable Debtors prior to the Effective Date, in full and final satisfaction, settlement, and release of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code and satisfied with a Cash distribution from the Administrative and Priority Claims Reserve; provided, however, that any Priority Tax Claim that has been assumed by the Purchaser pursuant to the Purchase Agreement shall not be an obligation of the Debtors.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations

become due. Any Claims asserted by a governmental unit on account of any penalties and assessments shall not be Priority Tax Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

C.     *Professional Fee Claims*

1.     <u>Professional Fee Escrow</u>

If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow. The Professionals shall estimate their Professional Fee Claims before and as of the Effective Date, taking into account any prior payments, and shall deliver such estimate to the Debtors no later than five calendar days before the anticipated Effective Date, as shall be indicated by the Debtors to such Professionals in writing as soon as reasonably practicable following Confirmation of the Plan. For the avoidance of doubt, the Professional Fee Claims Estimate shall not be deemed to limit the amount of fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court. The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate. If a Professional does not provide a Professional Fee Claims Estimate within the timeframe described herein, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. Except as provided in the Plan, the Professional Fee Escrow shall be funded on the Effective Date and maintained in trust by the Plan Administrator for the Professionals and shall not be considered property of the Debtors' Estates. When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow, if any, shall be transferred to the Term Loan Agent and shall be distributed in accordance with the Plan or, if otherwise agreed in writing by the Term Loan Agent in its sole discretion, allocated among any other reserves contemplated hereunder.

To the extent that funds held in the Professional Fee Escrow are unable to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals after application of funds held in the Professional Fee Escrow, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which Allowed Administrative Claim shall be satisfied in accordance with the Plan.

2.     <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims shall be Filed no later than the first Business Day that is 45 days after the Effective Date. After notice provided in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. Subject to Article II.C.1 hereof, the amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow, or as otherwise provided herein, when such Claims are Allowed by an order of the Bankruptcy Court, which order is not subject to a stay.

D.     *U.S. Trustee Statutory Fees*

The Debtors or the Plan Administrator, as applicable, shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## ARTICLE III

### CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

A.    *Summary of Classifications*

All Claims and Interests, other than Administrative Claims, Priority Tax Claims, and Professional Fee Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions under the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  The Debtors reserve the right to withdraw the Plan with respect to one or more Debtors while seeking Confirmation or approval of the Plan with respect to all other Debtors.

The Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

1.    Substantive Consolidation of the Estates

Pursuant to Article IV.A hereof, the Plan provides for the substantive consolidation of the Estates into a single Estate for all purposes associated with Confirmation (including voting) and Consummation.  As a result of the substantive consolidation of the Estates, each Class of Claims and Interests will be treated as a single consolidated Estate without regard to the separate identification of the Debtors.

2.    Class Identification

The classification of Claims against and Interests in each Debtor (as applicable) pursuant to the Plan is as set forth below.  To the extent there are no Holders of Claims or Interests in a particular Class or Classes, such Claims or Interests shall be treated as set forth in Article III.E hereof.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Conclusively Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Conclusively Presumed to Accept) |
| 3 | Revolving Credit Facility Claims | Unimpaired | Not Entitled to Vote (Conclusively Presumed to Accept) |
| 4 | Term Loan Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

| Class | Claims and Interests | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 9 | Holdings Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Classes of Claims and Interests*

Except to the extent that the Debtors and a Holder of an Allowed Claim or Interest, as applicable, agree to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, and release of and in exchange for such Holder's Allowed Claim or Interest.   Unless otherwise indicated, each Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter, the timing of which shall be subject to the reasonable discretion of the Debtors or the Plan Administrator, as applicable.

1.    Class 1—Other Priority Claims

(a)    *Classification*:  Class 1 consists of any Other Priority Claims against any Debtor.

(b)    *Treatment*:  Each Holder of an Allowed Class 1 Claim shall receive Cash in an amount equal to such Allowed Class 1 Claim.

(c)    *Voting*:  Class 1 is Unimpaired.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2—Other Secured Claims

(a)    *Classification*:  Class 2 consists of all Other Secured Claims, including all Secured Tax Claims, against any Debtor.

(b)    *Treatment*:  Each Holder of an Allowed Class 2 Claim shall receive, as the Debtors or the Plan Administrator, as applicable, determines:

(i)    payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)    the collateral securing such Holder's Allowed Other Secured Claim; or

(iii)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124(1) or (2) of the Bankruptcy Code.

(c)    *Voting*:  Class 2 is Unimpaired.  Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3—Revolving Credit Facility Claims

(a)    *Classification*:  Class 3 consists of any Revolving Credit Facility Claims.

(b)    *Treatment*:  Each Holder of an Allowed Class 3 Claim shall receive the treatment set forth in Article IV.D hereof and have its Allowed Class 3 Claim rendered Unimpaired in accordance with section 1124(1) or (2) of the Bankruptcy Code.

(c)    *Voting*:  Class 3 is Unimpaired.  Holders of Allowed Class 3 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

4.    <u>Class 4—Term Loan Claims</u>

   (a)    *Classification*:  Class 4 consists of all Term Loan Claims.

   (b)    *Allowance*:  Term Loan Claims shall be Allowed in the aggregate principal amount of $27,858,488.37 as of October 10, 2014, plus any accrued but unpaid prepetition interest thereon payable at the applicable interest rate(s) in accordance with the Term Loan Agreement.

   (c)    *Treatment*:  Each Holder of an Allowed Class 4 Claim shall receive its Pro Rata share of the Term Loan Lender Distribution.

   (d)    *Voting*:  Class 4 is Impaired.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5—General Unsecured Claims</u>

   (a)    *Classification*:  Class 5 consists of all General Unsecured Claims against any Debtor.

   (b)    *Treatment*:  Each Holder of an Allowed Class 5 Claim shall receive, as applicable:

      (i)    If the Allowed Class 5 Claim is held by a Participating GUC Holder, such Holders will be released from any Avoidance Actions as set forth herein and will receive Cash in an amount equal to its Pro Rata share of the GUC Reserve; or

      (ii)    If the Allowed Class 5 Claim is held by a Non-Participating GUC Holder, such Holders will be released from any Avoidance Actions as set forth herein but will not receive any distribution on account of such Allowed Class 5 Claim, and such Claim will be cancelled, released, and extinguished as of the Effective Date.

   Notwithstanding anything to the contrary in the Plan, no Holders of Claims, including, but not limited to, Secured Claims, Other Secured Claims, Administrative Claims, Priority Claims, Priority Tax Claims, Other Priority Claims, the Term Loan Deficiency Claim, Claims against or related to the D&O Policies or Claims for exculpation and/or indemnification, will receive a distribution from or share in the GUC Reserve except for Participating GUC Holders on account of their Allowed General Unsecured Claims. Source Media has acknowledged and agreed that its General Unsecured Claim will not share in the GUC Reserve and will not receive any distribution under the Plan.

   (c)    *Voting*:  Class 5 is Impaired.  Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.    <u>Class 6—Intercompany Claims</u>

   (a)    *Classification*:  Class 6 consists of all Intercompany Claims.

   (b)    *Treatment*:  Class 6 Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Class 6 Claims will not receive any distribution on account of such Class 6 Claims.

   (c)    *Voting*:  Class 6 is Impaired.  Holders of Claims in Class 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

7.      <u>Class 7—Section 510(b) Claims</u>

 (a)  *Classification*:  Class 7 consists of all Section 510(b) Claims.

 (b)  *Treatment*:  Class 7 Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Class 7 Claims will not receive any distribution on account of such Class 7 Claims.

 (c)  *Voting*:  Class 7 is Impaired.  Holders of Claims in Class 7 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

8.      <u>Class 8—Intercompany Interests</u>

 (a)  *Classification*:  Class 8 consists of all Intercompany Interests.

 (b)  *Treatment*:  Class 8 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Class 8 Interests will not receive any distribution on account of such Class 8 Interests.

 (c)  *Voting*:  Class 8 is Impaired.  Holders of Interests in Class 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

*9.*      <u>Class 9—Holdings Interests</u>

 (a)  *Classification*:  Class 9 consists of all Holdings Interests.

 (b)  *Treatment*:  Class 9 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Class 9 Interests will not receive any distribution on account of such Class 9 Interests.

 (c)  *Voting*:  Class 9 is Impaired.  Holders of Interests in Class 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Plan Administrator, the Debtors, or the Debtors' Estates in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

*F.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE IV**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

*A.      Substantive Consolidation*

The Plan shall serve as a motion by the Debtors seeking entry of an order pursuant to sections 105(a), 363(b), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and Consummation (the "Consolidation"). Among other things, the Consolidation encompasses a settlement with respect to Intercompany Claims, recoveries on account of certain Claims related to the Debtors' joint and several liabilities, and the allocation of the GUC Reserve Amount among the Estates because, under a strict interpretation of the absolute priority rule, the Debtors submit that Holders of Allowed General Unsecured Claims would not receive any distribution under the Plan. The tabulation of votes to accept or reject the Plan shall be counted on a consolidated basis.

Pursuant to the Consolidation, on and after the Effective Date: (1) all of the assets and liabilities of the Debtors shall be merged so that all of the assets of the Debtors shall be available to pay all of the liabilities under the Plan as set forth herein; (2) all of the funds held in the Administrative and Priority Claims Reserve shall be available to pay all of the Allowed Priority Claims; (3) all of the funds held in the GUC Reserve shall be available to pay all of the Allowed General Unsecured Claims held by Participating GUC Holders; (4) all of the Intercompany Claims shall be disallowed and expunged and no distributions shall be made on account of such Intercompany Claims; (5) all guarantees by the Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be one obligation of Holdings; and (6) each and every Claim Filed or to be Filed in the case of any of the Debtors other than Holdings shall be deemed Filed against Holdings.

The Consolidation (other than for purposes of effectuating the Plan) shall not affect: (1) the legal and corporate structures of the Debtors; (2) pre- and post-Effective Date guarantees, liens, and security interests that are required to be maintained (a) in connection with Executory Contracts and Unexpired Leases that have been or will be assumed, if any, or (b) pursuant to the Plan; (3) distributions from any insurance policies or proceeds of such policies; and (4) vesting of the Post-Effective Date Debtor Assets in the Post-Effective Date Debtor. If the Bankruptcy Court does not approve the Consolidation, or approves the Consolidation but with respect to less than all of the Debtors' Estates, then the Plan shall be treated as a separate plan of liquidation for each Debtor not substantively consolidated and such Debtor(s) shall not, nor shall be required to, resolicit votes with respect to the Plan, nor will the failure of the Bankruptcy Court to approve the Consolidation alter the distributions set forth in the Plan.

*B.      Sources of Consideration for Plan Distributions*

The Debtors' Cash on hand, the GUC Reserve Amount, the Debtors' rights under the Purchase Agreement, the Term Loan Lender Assets other than Cash, all Causes of Action not previously settled, released, or exculpated under the Plan, and the remainder of the Revolving Cash Reserve, if any, shall be used to fund the distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and subject to the terms provided herein.

C.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

D.      *Revolving Credit Facility Claims*

Effective as of the Effective Date, except with respect to the Continuing Obligations as set forth in this Article IV.D, the Debtors' obligations under the Revolving Credit Documents shall be deemed terminated, canceled, and released.  In full and final satisfaction, settlement, and release of and in exchange for each Holder's Allowed Revolving Credit Facility Claim, on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Plan Administrator on behalf of the Post-Effective Date Debtor, as the case may be, may take such actions, in their sole discretion, to effectuate the following:

1.      pay any accrued but unpaid amounts owing to the Revolving Credit Facility Agent or the Revolving Lenders under the Final Cash Collateral Order or the Revolving Credit Documents, in either case to the extent and in the manner provided therein;

2.      solely to the extent and in the manner provided by the Revolving Credit Documents (subparts (i)-(iv) of this Article IV.D.2, collectively, the "Continuing Obligations"):  (i) pay the Revolving Credit Facility Agent for all amounts paid by the Revolving Credit Facility Agent or any Revolving Lender in respect of amounts drawn under any Letter of Credit following the Effective Date, together with any applicable fees, charges, expenses (including bank charges and expenses), and indemnification obligations related thereto; (ii) satisfy all indemnification obligations and other similar obligations in favor of the Revolving Credit Facility Agent or any Revolving Lender, (including without limitation, any loss, cost, damage or claim which arises from any non-payment, claim, or refund of any checks or other similar items or any bookkeeping, accounting, or other errors in calculation), which expressly survive termination of the Revolving Credit Documents pursuant to the terms thereof; (iii) pay interest (if any and at the interest rate provided for in the Revolving Credit Documents prior to the Effective Date) upon all amounts owed to Revolving Credit Facility Agent and Revolving Lenders in respect of the outstanding Letters of Credit or otherwise in respect of the Continuing Obligations, as applicable; and (iv) pay any costs and expenses incurred by Revolving Credit Facility Agent or any Revolving Lender, including attorneys' fees and legal expenses in connection with any of the Continuing Obligations;

3.      as collateral security for the prompt payment in full and performance of the Continuing Obligations, subject to the Revolving Credit Facility Agent's obligations pursuant to this Article IV.D, grant, pledge, and assign the Post-Effective Date Debtors' interests in the Cash comprising the Revolving Cash Reserve (which is currently being held by Revolving Credit Facility Agent) to the Revolving Credit Facility Agent and the Revolving Lenders a security interest in and right of setoff against such Cash, which shall be held by Revolving Credit Facility Agent (without interest), less any amounts thereof previously applied to Continuing Obligations, for a period of not more than thirty (30) days following the expiration date of the last of the Letters of Credit to expire.  Subject in all respects to the provisions of Article IV.D.2 hereof and solely to the extent and in the manner provided by the Revolving Credit Documents, the Revolving Credit Facility Agent may immediately apply Cash from the Revolving Cash Reserve, less any amounts previously applied from time to time against the Continuing Obligations when due.  No later than thirty (30) days following the expiration date of the last of the Letters of Credit to expire, the Revolving Credit Facility Agent shall transfer any Cash remaining in the Revolving Cash Reserve following the application thereof to the Continuing Obligations to the Plan Administrator for distribution in accordance with the Plan; and

4.      execute and deliver such other and further documents as may be reasonably requested by the Revolving Credit Facility Agent.

The Revolving Credit Facility Agent and Revolving Lenders acknowledge and agree that the foregoing treatment of their Allowed Class 3 Claims, together with the other provisions of this Plan, renders them Unimpaired.

E.      *Post-Effective Date Debtor*

From and after the Effective Date, the Post-Effective Date Debtor shall continue in existence for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously and efficaciously as reasonably possible, (2) resolving Disputed Claims, (3) paying Allowed Priority Claims, Allowed General Unsecured Claims, and Professional Fee Claims, (4) enforcing and prosecuting claims, interests, rights, and privileges under the Post-Effective Date Debtor Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (5) holding the D&O Policies and the LLC Agreement, (6) filing appropriate tax returns, and (7) administering the Plan in an efficacious manner.  The Post-Effective Date Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (8) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (9) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Effective Date, the Plan Administrator shall establish the Post-Effective Date Debtor Reserve with the proceeds from the Post-Effective Date Debtor Cash Distribution, and such proceeds, together with the Post-Effective Date Debtor Assets, shall vest in the Post-Effective Date Debtor for the purpose of liquidating the Estates and Consummating the Plan.  The Post-Effective Date Debtor Assets shall be held free and clear of all liens, claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  Any distributions to be made under the Plan from the Post-Effective Date Debtor Assets shall be made by the Plan Administrator or its designee(s).  Notwithstanding anything herein to the contrary, the Post-Effective Date Debtor and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

F.      *Plan Administrator*

The Plan Administrator shall act for the Post-Effective Date Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and the Plan Administrator Agreement.  On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Post-Effective Date Debtor shall be deemed to have resigned, and a representative of the Plan Administrator shall be appointed as the sole manager and sole officer of the Post-Effective Date Debtor and shall succeed to the powers of the Post-Effective Date Debtor's managers and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtor.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Post-Effective Date Debtor Assets and wind down the businesses and affairs of the Debtors and the Post-Effective Date Debtor, including:  (1) liquidating, receiving, holding, and investing, supervising, and protecting the Post-Effective Date Debtor Assets; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Post-Effective Date Debtor Assets; (3) making distributions from the Post-Effective Date Debtor Assets as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtor, including the Post-Effective Date Debtor Reserve; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtor; (7) administering and paying taxes of the Post-Effective Date Debtor, including filing tax returns; (8) representing the interests of the Post-Effective Date Debtor or the Estates before any taxing authority in all matters, including any action, suit, proceeding or audit; (9) transferring any unliquidated Post-Effective Date Debtor Causes of Action to a litigation trust no later than January 31, 2016; and (10) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan or the Plan Administrator Agreement, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court, the Term Loan Agent, and the GUC Administration Oversight Committee, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. The Plan Administrator may also be removed by the Term Loan Agent. In the event the Plan Administrator resigns or is removed, the Term Loan Agent shall select a successor Plan Administrator, which successor Plan Administrator shall (unless at the time such successor Plan Administrator is selected 75% or more of the Cash funded into the GUC Reserve from the GUC Reserve Funding Source on the Effective Date has been distributed, paid, or otherwise disbursed in accordance with the Plan) be subject to the GUC Administration Oversight Committee's consent, which consent shall not be unreasonably withheld. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtor shall be terminated.

1.    Tax Returns

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

2.    Administrative and Priority Claims Reserve

On the Effective Date, the Debtors shall fund, and the Plan Administrator shall establish and thereafter maintain, the Administrative and Priority Claims Reserve with the Administrative and Priority Claims Reserve Amount in an authorized depository in the District of Delaware, which funds shall vest in the Post-Effective Date Debtor free and clear of all liens, Claims, encumbrances, charges, and other interests, except as otherwise specifically provided in the Plan or in the Confirmation Order. Funds in the Administrative and Priority Claims Reserve shall be used by the Plan Administrator only for the payment of Priority Claims Allowed after the Effective Date to the extent that such Priority Claims have not been paid in full on or prior to the Effective Date. To the extent any funds remain in the Administrative and Priority Claims Reserve after all of such Priority Claims have been paid or otherwise satisfied in full, such remaining funds shall be distributed by the Plan Administrator to the Term Loan Agent for the benefit of the Term Loan Lenders in accordance with the Plan. Notwithstanding anything to the contrary herein, neither the Plan Administrator, the Post-Effective Date Debtor, the Term Loan Agent, the Term Loan Lenders, nor any other party in interest shall be obligated to fund the Administrative and Priority Claims Reserve in an aggregate amount in excess of the Administrative and Priority Claims Reserve Amount.

3.    GUC Administration

(a)    GUC Reserve

On the Effective Date, the GUC Reserve shall be funded from the GUC Reserve Funding Source with the GUC Reserve Amount (which, for the avoidance of doubt, shall equal $4.5 million, subject to certain adjustments), and the Plan Administrator shall establish and thereafter maintain the GUC Reserve in a separate, segregated account, in an authorized depository in the District of Delaware, which funds shall vest in the Post-Effective Date Debtor free and clear of all liens, Claims, encumbrances, charges, and other interests, except as otherwise specifically provided in the Plan or in the Confirmation Order. Funds in the GUC Reserve shall be used by the Plan Administrator only:  (i) for the payment of Allowed General Unsecured Claims held by Participating GUC Holders to the extent that such General Unsecured Claims have not been paid in full on or prior to the Effective Date; and (ii) to fund the GUC Administration Costs. On or after the Effective Date and subject to the administration of General Unsecured Claims, the Plan Administrator shall reduce the GUC Reserve Amount by the Pro Rata share of Allowed General Unsecured Claims held by Non-Participating GUC Holders. Any Cash held in the GUC Reserve that exceeds the adjusted GUC Reserve Amount shall be transferred to the Post-Effective Date Debtor and thereafter distributed to Holders of Allowed Term Loan Claims or returned to the applicable Third Party Release(s) (or its or their designees) that funded the GUC Reserve Amount. Neither the Post-Effective Date Debtor nor the Third Party Releasees will have any further reversionary or other interest in or with respect to any of the GUC Reserve Amount. Notwithstanding anything to the contrary herein, neither the Plan Administrator, the Post-Effective Date Debtor, the

Third Party Releasees, nor any other party in interest shall be obligated to fund the GUC Reserve in an aggregate amount in excess of the GUC Reserve Amount.

(b)   GUC Administration Oversight Committee

On the Effective Date, the GUC Administration Oversight Committee shall be formed and comprised of three members selected by the Committee.  The members comprising the GUC Administration Oversight Committee shall be identified at or prior to the Confirmation Hearing.

The GUC Administration Oversight Committee shall have the right to appoint and/or replace the professionals used by the Plan Administrator in connection with the accounting, claims reconciliation, settlement, compromise, and objections with respect to General Unsecured Claims held by Participating GUC Holders.  The Plan Administrator or its designee shall report all material matters (as described in the Plan Administrator Agreement) to, and seek approval for all material decisions (as described in the Plan Administrator Agreement) from, the GUC Administration Oversight Committee solely with respect to the rights of Holders of General Unsecured Claims under the Plan.

From and after the Effective Date, settlement by the Post-Effective Date Debtor of any General Unsecured Claims shall require:  (x) approval only of the Plan Administrator, if the amount of the General Unsecured Claim asserted by a claimant is less than $1.5 million; and (y) approval only of the Plan Administrator and the GUC Administration Oversight Committee, if the amount of the General Unsecured Claim asserted by a claimant is more than $1.5 million; provided, that to the extent the Plan Administrator and the GUC Administration Oversight Committee cannot agree to a settlement within the purview of the foregoing part (y), the parties shall seek a determination from the Bankruptcy Court resolving the dispute as soon as reasonably practicable thereafter.

(c)   Distributions; Withholding

The Plan Administrator will make, or cause to be made by its designee(s), all distributions under the Plan to Holders of Allowed General Unsecured Claims.  The Post-Effective Date Debtor may withhold from amounts distributable to any Entity any and all amounts, determined in the Plan Administrator's sole discretion, required by the Plan, or applicable law, regulation, rule, ruling, directive, or other governmental requirement.

4.  **D&O Policies**

Notwithstanding anything to the contrary contained herein or in the Confirmation Order, Confirmation of the Plan shall not impair or otherwise modify any obligations arising under the D&O Policies.  In addition, after the Effective Date, the Plan Administrator shall not terminate or otherwise reduce coverage under any D&O Policy, including, without limitation, any "tail policy," in effect as of the Petition Date, and all directors, managers, and officers of the Debtors who served in such capacity as of the Petition Date at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

5.  **Wind Down**

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as reasonably practicable after the Effective Date, except with respect to the Post-Effective Date Debtor as set forth herein, the Plan Administrator shall:  (1) cause the Debtors to comply with, and abide by, the terms of the Purchase Agreement; (2) file for each of the Debtors a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable), including, but not limited to, any actions contemplated in sections 275–283 of the General Corporation Law of the State of Delaware (the "DGCL"); and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the

27

purposes of the Plan. For purposes of clause (2) of the preceding sentence, the Plan shall constitute a plan of distribution as contemplated in the DGCL. The certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the equity holders or boards of directors or managers of any Debtor. From and after the Effective Date, except with respect to the Post-Effective Date Debtor as set forth herein, the Debtors (4) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (5) shall be deemed to have cancelled pursuant to the Plan all Interests, and (6) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, except with respect to the Post-Effective Date Debtor as set forth herein, (7) notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

6. _Exculpation; Indemnification; Insurance; Liability Limitation_

The Plan Administrator, all professionals retained by the Plan Administrator, and representatives of each of the foregoing shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtor under the terms of the Plan Administrator Agreement. The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtor and with funds from the Post-Effective Date Debtor Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtor. The Plan Administrator may rely upon written information previously generated by the Debtors or the Post-Effective Date Debtor.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or the Post-Effective Date Debtor.

7. _Dissolution of the Post-Effective Date Debtor_

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtor shall be deemed to be dissolved without any further action by the Post-Effective Date Debtor, including the filing of any documents with the secretary of state for the state in which the Post-Effective Date Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtor in and withdraw the Post-Effective Date Debtor from applicable state(s).

G. *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, including, without limitation, the Revolving Credit Documents and the Term Loan Documents, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled as to the Debtors; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; _provided_, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing

such Holders to receive distributions under the Plan as provided herein; provided, further, that the foregoing shall not affect those provisions under the Revolving Loan Documents that by their terms survive termination.

H.    *Corporate Action*

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

Upon the Effective Date or as soon as reasonably practicable thereafter, after (1) making distributions provided for under the Plan, and (2) the vesting of the Post-Effective Date Debtor Assets in the Post-Effective Date Debtor, the Debtors other than the Post-Effective Date Debtor shall be deemed to have been dissolved and terminated.

Upon the Effective Date or as soon as reasonably practicable thereafter, the existing boards of directors and managers, as applicable, of the Debtors other than the Post-Effective Date Debtor shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any all remaining officers or directors of each Debtor other than the Post-Effective Date Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders of such Debtor, or the officers and directors of such Debtor.  The directors, managers, and officers of the Debtors and the Plan Administrator, as applicable, shall be authorized to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of this Article IV.H.

The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under applicable nonbankruptcy law.

I.    *Effectuating Documents; Further Transactions*

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

J.    *Exemption from Certain Taxes and Fees*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.    *Causes of Action*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled under the Plan or any Final Order (including, for the avoidance of doubt, any claims or Causes of Action released pursuant to Article VIII.D hereof), the Debtors reserve and, as of the Effective Date, assign to the Post-Effective Date Debtor the Post-Effective Date Debtor Causes of Action, which shall include, for the avoidance of doubt, those Causes of Action identified as being retained in the Plan Supplement.  On and after the Effective Date, the Plan Administrator may pursue the Post-Effective Date Debtor Causes of Action on behalf of and for the benefit of the applicable beneficiaries.  On the Effective Date, all Avoidance Actions shall be deemed waived, relinquished, and extinguished.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any such Cause of Action against them as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Actions against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors reserve such Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

L.      *Closing the Chapter 11 Cases*

Upon the occurrence of the Effective Date, the Plan Administrator shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of Holdings, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Holdings.

When all Disputed Claims have become Allowed or disallowed, all remaining Cash has been distributed in accordance with the Plan, and the business and affairs of the Post-Effective Date Debtor have been otherwise wound down, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of Holdings in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Assignment of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed or assumed and assigned to the Purchaser or another third party, as applicable, in connection with the Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy; (6) is the Purchase Agreement; or (7) is the LLC Agreement.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Obligation in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitation described below, by the Debtors as an Administrative Claim or by Purchaser in accordance with the Purchase Agreement, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of the Cure Obligation, (2) the ability of the Debtors' Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided, that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Unless otherwise provided by an order of the Bankruptcy Court, at least twenty-one (21) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption and proposed Cure Obligations to be sent to applicable counterparties.  Any objection by such counterparty must be Filed, served, and actually received by the Debtors not later than fourteen (14) days after service of notice of the Debtors' proposed assumption and associated Cure Obligations.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment.  **Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity**.

C.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with Bankruptcy Court and served on the Debtors or, after the Effective Date, the Plan Administrator, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Plan Administrator, as applicable, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Post-Effective Date Debtor, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or the Plan Administrator, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the Debtors' prepetition

Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims against the appropriate Debtor, except as otherwise provided by order of the Bankruptcy Court.

D.      *Purchase Agreement; Assumed Contracts*

The Debtors' assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Purchaser's rights and obligations, including any Cure Obligations assumed by the Purchaser in accordance with the Purchase Agreement, with respect to any such Executory Contracts or Unexpired Leases that constitute Assumed Contracts (as defined in the Purchase Agreement) as set forth in the Purchase Agreement, including section 2.6 thereof.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Debtors on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *D&O Policies*

The D&O Policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any of the D&O Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies.

G.      *Indemnification Obligations*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors' and officers' respective Affiliates, respectively, against any Claims or Causes of Action under the Indemnification Provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtor, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; provided, however, that, notwithstanding anything herein to the contrary, the Post-Effective Date Debtor's obligation to fund such Indemnification Provisions shall be limited to the extent of coverage available under any insurance policy assumed by the Debtors and assigned to the Post-Effective Date Debtor, including the D&O Policies.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection,

the Debtors or the Plan Administrator, as applicable, shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Calculation of Amounts to Be Distributed*

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Plan Administrator on behalf of the Debtors or Post-Effective Date Debtor, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

B.    *Rights and Powers of the Debtors and the Plan Administrator*

1.    Powers of the Debtors and the Plan Administrator

Except as otherwise set forth herein, all distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter by the Debtors or the Plan Administrator (or its designee(s)), the timing of which shall, in consultation with the Term Loan Agent as to the Term Loan Lender Distribution, be subject to the reasonable discretion of the Debtors or the Plan Administrator, as applicable.

After the Effective Date, the Plan Administrator and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any General Unsecured Claim or Priority Claim, subject to the terms hereof.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Post-Effective Date Debtor Reserve.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court in Cash from (a) the GUC Reserve if such amounts relate to GUC Administration Costs, and (b) the Post-Effective Date Debtor Reserve if such amounts relate to any other actions taken hereunder.

C.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and the Debtors, the Plan Administrator, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.      Delivery of Distributions in General

(a)      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the reasonable discretion of the Plan Administrator, be deemed to have been made by the Plan Administrator on the Effective Date unless the Plan Administrator and the Holder of such Claim agree otherwise.

(b)      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors or the Plan Administrator, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

(c)      Distributions

On and after the Effective Date, the Debtors and the Plan Administrator, as applicable, shall make the distributions required to be made on account of Allowed Claims under the Plan.  Distributions on account of Allowed Class 4 Claims shall be deposited with the Term Loan Agent, at which time such distribution shall be deemed complete, and the Term Loan Agent shall deliver such distributions in accordance with the Plan and the terms of the Term Loan Documents.  Any distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that distribution is not an Allowed Claim on such date, shall be held by the Plan Administrator in the Administrative and Priority Claims Reserve, the GUC Reserve, or the Disputed Claims Reserve, as applicable, and distributed on the next Subsequent Distribution Date that occurs after such Claim is Allowed.  In accordance with Article VII.D hereof, no interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to the Plan.

3.      Minimum; De Minimis Distributions

No Cash payment of less than $100.00, in the reasonable discretion of the Debtors or the Plan Administrator, as applicable, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors or the Plan Administrator, as applicable, has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of three months from the date the initial distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Post-Effective Date Debtor automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred; provided, that such unclaimed property or interests in property on account of Allowed General Unsecured Claims held by Participating GUC Holders shall be allocated to the GUC Reserve for further distribution to other Participating GUC Holders of Allowed General Unsecured Claims in accordance herewith.

5.      Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtors or the Plan Administrator, as applicable, by check or by wire transfer.

D.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Debtors or the Plan Administrator, as applicable, are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.    The Plan Administrator is authorized to require that any Holder of an Allowed Claim provide it with all forms and information required to comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit (the "Required Tax Documents") as a condition precedent to being sent a distribution.    In the event that a Holder fails to return Required Tax Documents within 45 days after a written request by the Plan Administrator, such Holder, its Claim, and all distributions on account of such Holder's Claim shall be treated as an undeliverable distributions and unclaimed property in accordance with Article VI.C.4 hereof.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

E.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties; Recourse to Collateral

The Debtors or the Plan Administrator, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Post-Effective Date Debtor, as applicable, including on account of recourse to collateral held by third parties that secure such Claim.    To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.    The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Insurance, Third Parties; Recourse to Collateral

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable.    To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's insurance policies with respect to such policies, including the D&O Policies.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS**

A.      *Resolution of Disputed Claims*

      1.      <u>Allowance of Claims and Interests</u>

      Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest, except with respect to any Claim or Interest deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

      2.      <u>Prosecution of Objections to Claims</u>

      Other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Plan Administrator shall have the authority to File objections to such Claims, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all such Claims, regardless of whether such Claims are in a Class or otherwise, subject to the terms hereof (including Articles IV.F.3 and VI.B hereof).  From and after the Effective Date, the Plan Administrator or its designee(s) shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises and no further notice to or action, order, or approval of the Bankruptcy Court with respect to such settlements or compromises shall be required.

      3.      <u>Claims Estimation</u>

      On and after the Effective Date, the Plan Administrator, may, at any time, request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Plan Administrator have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any contingent or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

      Notwithstanding any provision herein to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtors or the Plan Administrator as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.      Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtors or the Plan Administrator (or the Notice and Claims Agent at, as applicable, the Debtors' or the Plan Administrator's direction), and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtors or the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

5.      Deadline to File Objections to Claims or Interests

Any objections to Claims or Interests shall be Filed no later than the Claims Objection Bar Date.

B.      *Disallowance of Claims*

To the maximum extent provided by section 502(d) of the Bankruptcy Code, all Claims of any Entity from which property is recoverable by the Debtors or the Plan Administrator, as applicable, under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Plan Administrator, as applicable, alleges is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtors or the Plan Administrator, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

C.      *Amendments to Claims*

After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim or Interest Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided, that such Holder may amend the Claim or Interest Filed solely to decrease, but not to increase, the amount, number, or priority of such Claim or Interest, unless otherwise provided by the Bankruptcy Court.

D.      *No Interest*

Unless otherwise specifically provided for in the Plan (including Article III hereof), by applicable law (including, without limitation, section 506(b) of the Bankruptcy Code), or agreed-to by, as applicable, the Debtors or the Plan Administrator, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final distribution paid on account of such Claim occurs after the Effective Date.

## ARTICLE VIII

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or

Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests, subject to the Effective Date occurring.

B.      *Release of Liens*

        Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

C.      *Subordinated Claims*

        The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Debtors or the Plan Administrator, as applicable, to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

D.      *Debtor Release*

        ON AND EFFECTIVE AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, EACH DEBTOR ON BEHALF OF ITSELF, ITS ESTATE, AND THE POST-EFFECTIVE DATE DEBTOR (SUCH THAT THE POST-EFFECTIVE DATE DEBTOR WILL NOT HOLD ANY CLAIMS OR CAUSES OF ACTION RELEASED PURSUANT TO THIS ARTICLE VIII.D), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO EACH OF THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SHALL BE DEEMED RELEASED BY EACH DEBTOR AND ITS ESTATE) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION AND ANY OTHER CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, DERIVATIVE CLAIMS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE, IN LAW, AT EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, THE PLAN, THE DISCLOSURE STATEMENT, THE SALE TRANSACTION, ANY RESTRUCTURING OF CLAIMS OR INTERESTS UNDERTAKEN PRIOR TO THE PETITION DATE, THE BIDDING AND SALE PROCESS FOR ANY ASSETS OF ANY DEBTOR, OR THESE CHAPTER 11 CASES, INCLUDING THOSE THAT THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTOR WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTORS OR ANY OTHER ENTITY COULD HAVE BEEN LEGALLY ENTITLED TO ASSERT DERIVATIVELY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES; PROVIDED, HOWEVER, THAT THE FOREGOING "DEBTOR RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF

ACTION OF ANY DEBTOR OR THEIR RESPECTIVE CHAPTER 11 ESTATES AGAINST A RELEASED PARTY  ARISING UNDER (1) ANY OBLIGATION OWED TO THE DEBTORS THAT IS ENTERED INTO, ALLOWED, PRESERVED, OR ASSUMED PURSUANT TO THE PLAN (INCLUDING THE POST-EFFECTIVE DATE DEBTOR CAUSES OF ACTION WHICH SHALL INCLUDE THOSE CAUSES OF ACTION IDENTIFIED IN THE PLAN SUPPLEMENT AS BEING RETAINED), (2) THE CONFIRMATION ORDER, OR (3) THE PURCHASE AGREEMENT.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

E.      *Third Party Release*

ON AND EFFECTIVE AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, EACH OF THE RELEASING PARTIES, IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS UNDER THIS PLAN AND THE CASH AND OTHER CONSIDERATION, CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THIS PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED EACH DEBTOR, THIRD PARTY RELEASEE, AND EACH OF THE FOREGOING ENTITIES' RESPECTIVE PREDECESSORS, SUCCESSORS AND ASSIGNS, PROFESSIONALS, REPRESENTATIVES, ADVISORS, ATTORNEYS, FINANCIAL ADVISORS, AND OTHER AGENTS FROM ANY CLAIM, RETAINED ACTION, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, LIABILITY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE ARISING FROM, BASED UPON OR RELATING TO, IN WHOLE OR IN PART, (1) THE SUBJECT MATTER OF, OR THE TRANSACTION OR EVENT GIVING RISE TO, THE CLAIM OF SUCH RELEASING PARTY AGAINST ANY OF THE DEBTORS, AND ANY ACT, OMISSION, OCCURRENCE OR EVENT IN ANY MANNER RELATED TO THE CHAPTER 11 CASES OR SUCH SUBJECT MATTER, TRANSACTION OR OBLIGATION OR (2) THE PRIOR OR EXISTING BUSINESS OR OPERATIONS OF ANY OF THE DEBTORS; PROVIDED, HOWEVER, THAT THE FOREGOING "THIRD PARTY RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION (A) OF ANY DEBTOR OR THEIR RESPECTIVE CHAPTER 11 ESTATES OR RELEASING PARTY AGAINST A THIRD PARTY RELEASEE ARISING UNDER (1) ANY OBLIGATION OWED TO THE DEBTORS THAT IS ENTERED INTO, ALLOWED, PRESERVED, OR ASSUMED PURSUANT TO THE PLAN (INCLUDING THE POST-EFFECTIVE DATE DEBTOR CAUSES OF ACTION WHICH SHALL INCLUDE THOSE CAUSES OF ACTION IDENTIFIED IN THE PLAN SUPPLEMENT AS BEING RETAINED), THE CONFIRMATION ORDER, OR THE PURCHASE AGREEMENT, (2) THE CORAL SPRINGS LOAN AND THE CORAL SPRINGS GUARANTY, OR (3) THE MEDIA REVOLVING CREDIT AGREEMENT, OR (B) BY, AMONG, AND AGAINST ANY OF THE THIRD PARTY RELEASEES WHICH ARE PARTIES TO THE MEDIA REVOLVING CREDIT AGREEMENT AND THE OTHER AGREEMENTS, DOCUMENTS AND INSTRUMENTS ENTERED INTO IN CONNECTION WITH THE MEDIA REVOLVING CREDIT AGREEMENT, INCLUDING WITHOUT LIMITATION THE INTERCREDITOR AGREEMENTS BY AND AMONG THE MEDIA REVOLVING CREDIT FACILITY AGENT, MEDIA FIRST LIEN TERM LOAN AGENT AND THE MEDIA SECOND LIEN TERM LOAN AGENT.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THIS THIRD PARTY RELEASE BY

RELEASING PARTIES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THIS THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE THIRD PARTY RELEASEES; (2) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (3) FAIR, EQUITABLE AND REASONABLE; (4) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (5) A BAR TO ANY RELEASING PARTY ASSERTING ANY CLAIM RELEASED PURSUANT TO THIS THIRD PARTY RELEASE.

*F.      Release by Third Party Releasees*

ON AND EFFECTIVE AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, EACH OF THE THIRD PARTY RELEASEES, IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS UNDER THIS PLAN AND THE CASH AND OTHER CONSIDERATION, CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THIS PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED EACH RELEASING PARTY FROM ANY CLAIM, RETAINED ACTION, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, LIABILITY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE ARISING FROM, BASED UPON OR RELATING TO, IN WHOLE OR IN PART, (1) THE SUBJECT MATTER OF, OR THE TRANSACTION OR EVENT GIVING RISE TO, THE CLAIM OF SUCH RELEASING PARTY AGAINST ANY OF THE DEBTORS, AND ANY ACT, OMISSION, OCCURRENCE OR EVENT IN ANY MANNER RELATED TO THE CHAPTER 11 CASES OR SUCH SUBJECT MATTER, TRANSACTION OR OBLIGATION OR (2) THE PRIOR OR EXISTING BUSINESS OR OPERATIONS OF ANY OF THE DEBTORS; PROVIDED, HOWEVER, THAT THE FOREGOING "RELEASE BY THIRD PARTY RELEASEES" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION (A) OF ANY DEBTOR OR THEIR RESPECTIVE CHAPTER 11 ESTATES OR THIRD PARTY RELEASEE AGAINST A RELEASING PARTY ARISING UNDER (1) ANY OBLIGATION OWED TO THE DEBTORS THAT IS ENTERED INTO, ALLOWED, PRESERVED, OR ASSUMED PURSUANT TO THE PLAN (INCLUDING THE POST-EFFECTIVE DATE DEBTOR CAUSES OF ACTION WHICH SHALL INCLUDE THOSE CAUSES OF ACTION IDENTIFIED IN THE PLAN SUPPLEMENT AS BEING RETAINED), THE CONFIRMATION ORDER, OR THE PURCHASE AGREEMENT, (2) THE CORAL SPRINGS LOAN AND THE CORAL SPRINGS GUARANTY, OR (3) THE MEDIA REVOLVING CREDIT AGREEMENT, OR (B) BY, AMONG, AND AGAINST ANY OF THE THIRD PARTY RELEASEES WHICH ARE PARTIES TO THE MEDIA REVOLVING CREDIT AGREEMENT AND THE OTHER AGREEMENTS, DOCUMENTS AND INSTRUMENTS ENTERED INTO IN CONNECTION WITH THE MEDIA REVOLVING CREDIT AGREEMENT, INCLUDING WITHOUT LIMITATION THE INTERCREDITOR AGREEMENTS BY AND AMONG THE MEDIA REVOLVING CREDIT FACILITY AGENT, MEDIA FIRST LIEN TERM LOAN AGENT AND THE MEDIA SECOND LIEN TERM LOAN AGENT.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THIS RELEASE BY THIRD PARTY RELEASEES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THIS RELEASE BY THIRD PARTY RELEASEES IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASING PARTIES; (2) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (3) FAIR, EQUITABLE AND REASONABLE; (4) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (5) A BAR TO ANY THIRD PARTY RELEASEES ASSERTING ANY CLAIM RELEASED PURSUANT TO THIS RELEASE BY THIRD PARTY RELEASEES.

G.    *Exculpation*

The Exculpated Parties shall neither have, nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors; provided, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement. Without limiting the foregoing "Exculpation" provided under this Article VIII.G, the rights of any Holder of a Claim or Interest to enforce rights arising under the Plan shall be preserved, including the right to compel payment of distributions in accordance with the Plan.

H.    *Injunction*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D HEREOF; (3) HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.E OR ARTICLE VIII.F HEREOF; (4) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.G HEREOF; OR (5) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF OR SUBROGATION RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED, THAT NOTHING CONTAINED IN THE PLAN SHALL

PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

I.      *Parties Unaffected by Releases*

For the avoidance of doubt, the forgoing Debtor Release, Third Party Release, and Release by Third Party Releasees shall not apply to or bind (1) any creditor or Holder of a Claim against the Debtors that opts out of the third party release by checking the box on a Ballot and returning such Ballot in accordance with the Disclosure Statement Order, and (2) any Entity that is not a creditor of the Debtors and is not obtaining a release under the Plan.

J.      *Waiver of Statutory Limitations on Releases*

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER THIS ARTICLE VIII) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, THEY HAVE CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.  THE RELEASES CONTAINED IN THIS ARTICLE VIII ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.  FOR THE AVOIDANCE OF DOUBT, THE DEBTORS, HOLDERS OF CLAIMS OR INTERESTS, RELEASING PARTIES, AND THIRD PARTY RELEASEES, BEING MADE AWARE OF SECTION 1542 AND SIMILAR LAWS AND COMMON LAW PRINCIPLES, HEREBY ARE DEEMED TO HAVE EXPRESSLY WAIVED ANY RIGHTS THAT ANY OF THEM MIGHT HAVE OR ASSERT THEREUNDER, TO THE EXTENT THAT SUCH SECTION RELATES TO ANY OF THE CLAIMS RELEASED PURSUANT TO THIS ARTICLE VIII.

K.      *Setoffs*

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, pursuant to the Bankruptcy Code (including sections 553 and 558 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest on account of any Proof of Claim or proof of Interest or other pleading Filed with respect thereto prior to the Confirmation Hearing and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Causes of Action of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Plan Administrator, as applicable, of any such claims, rights, and Causes of Action that the Debtors' Estates may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right, or Cause of Action of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court expressly preserving such setoff; provided, that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Plan Administrator's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

## ARTICLE IX

## CONFIRMATION AND SUBSTANTIAL CONSUMMATION OF THE PLAN

A.     *Condition Precedent to Confirmation of the Plan*

It shall be a condition to Confirmation of the Plan that the Third Party Releasees have not exercised the GUC Funding Election.

B.     *Conditions Precedent to Consummation of the Plan*

It shall be a condition to Consummation of the Plan that the following conditions have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.     the Bankruptcy Court shall have entered the Confirmation Order in form and substance materially consistent with the Plan in all respects;

2.     the Plan Administrator shall have been appointed and the Plan Administrator Agreement shall have been executed and become effective;

3.     the GUC Administration Oversight Committee shall have been appointed;

4.     all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

5.     the Administrative and Priority Claims Reserve shall have been established and funded;

6.     the Professional Fee Escrow shall have been established and funded;

7.     the GUC Reserve shall have been established and funded in a separate, segregated account; and

8.     the Post-Effective Date Debtor Distribution shall have occurred.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

C.     *Waiver of Conditions*

The conditions to Confirmation of the Plan set forth in Article IX.A hereof are non-waivable.   The conditions to Consummation of the Plan set forth in Article IX.B hereof may be waived by the Debtors, subject to Article X.A hereof.

D.     *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

# ARTICLE X

# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments*

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; provided, however, that the Debtors shall not modify the Plan:  (1) as to material terms that adversely affect the rights of Holders of Term Loan Claims under the Plan, without the prior written consent of the Term Loan Agent, which consent shall not be unreasonably withheld, or (2) (a) as to material terms that adversely affect the rights of Holders of General Unsecured Claims under the Plan, or (b) in such a way that materially delays Confirmation of the Plan on the schedule set forth in the Disclosure Statement Order for a period greater than 70 days, in each case without the prior written consent of the Committee, which consent shall not be unreasonably withheld; provided, further, however, that to the extent the Debtors and the Term Loan Agent, or the Debtors and the Committee, cannot agree to a modification within the purview of the foregoing proviso, the applicable parties shall seek a determination from the Bankruptcy Court resolving the dispute as soon as reasonably practicable thereafter. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X hereof.

*B.      Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then:  (1) the Plan with respect to such Debtor shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with respect to such Debtor, shall be deemed null and void; and (3) nothing contained in the Plan with respect to such Debtor shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

# ARTICLE XI

# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtors or the Plan Administrator amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases set forth on the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.E.1 hereof;

13.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.    adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.    determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.    hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

21.    enforce all orders previously entered by the Bankruptcy Court;

22.    hear any other matter not inconsistent with the Bankruptcy Code;

23.    enter an order concluding or closing the Chapter 11 Cases; and

24.    enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Debtors' Estates, the Post-Effective Date Debtor, the Plan Administrator, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all

other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve and members thereof shall be compromised, settled, and released from all rights and duties from or related to the Chapter 11 Cases, except the Committee will remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.  The Debtors and the Post-Effective Date Debtor shall have no obligation to pay any fees or expenses incurred after the Effective Date by the Committee or the Committee Members.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the following entities and shall be served via first class mail, overnight delivery, or messenger on.

If to the Debtors or the Plan Administrator, to:

> Source Home Entertainment, LLC
> c/o FTI Consulting
> 8251Greensboro Drive
> Suite 400
> McLean, Virginia 22102
> Attn:  Joshua Korsower/Stephen Dubé

with copies to:

> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois  60654
> Attn.:  David L. Eaton, Michael W. Weitz, and Ben Winger
>
> Young Conaway Stargatt & Taylor, LLP
> Rodney Square
> 1000 North King Street
> Wilmington Delaware 19801
> Attn:  Robert S. Brady, Pauline K. Morgan, and Edmon L. Morton

If to the GUC Administration Oversight Committee, to:

[•]

with copies to:

> Lowenstein Sandler LLP
> 65 Livingston Avenue
> Roseland, New Jersey 07068
> Attn.:  Bruce Buechler
>
> Duane Morris LLP
> 222 Delaware Avenue
> Wilmington, Delaware 19801
> Attn:  Christopher M. Winter

### G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the later of the maximum extent permitted by law or the closing of the Chapter 11 Cases.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### H.    *Entire Agreement*

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### I.    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

### J.    *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

*[Signature Page Follows]*

Respectfully submitted, as of the date first set forth above,

SOURCE HOME ENTERTAINMENT, LLC
on behalf of itself and all other Debtors

By: */s/ Stephen Dubé*
Name: Stephen Dubé
Title: Chief Restructuring Officer