## EXHIBIT A

## Proposed Form of Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SOURCE HOME ENTERTAINMENT, LLC, *et al.*,[1] | ) Case No. 14-11553 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re:  Docket No. __** |

## ORDER AUTHORIZING THE DEBTORS
## TO ENTER INTO A SETTLEMENT AGREEMENT

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) approving the Settlement Agreement, annexed hereto as **Exhibit 1**; and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having reviewed the Settlement Agreement and having determined that it is in the best

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Source Home Entertainment, LLC (8517); Directtou, Inc. (4741); RDS Logistics, LLC (0305); Retail Vision, LLC (2023); Source Interlink Distribution, LLC (3387); Source Interlink International, Inc. (1428); Source Interlink Manufacturing, LLC (7123); and Source Interlink Retail Services, LLC (6967).  The location of the Debtors' corporate headquarters and the service address for all Debtors is:  27500 Riverview Center Boulevard, Suite 400, Bonita Springs, Florida 34134.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

interests of the Debtors, their creditors, and their estates; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and

no other notice need be provided; and this Court having reviewed the Motion and having heard

the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized to enter into the Settlement Agreement attached as

**Exhibit 1** hereto, and the Settlement Agreement is approved in its entirety.

3.      The Debtors' notice and claims agent is hereby authorized to adjust the claims

register maintained in the Debtors' chapter 11 cases to amend the Proofs of Claim as set forth on

Exhibit A to the Settlement Agreement.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient and

the requirements of Bankruptcy Rule 6004 is satisfied by such notice of otherwise deemed

waived to the extent applicable.

5.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and

conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order in accordance with the Motion and the Settlement Agreement.

7.      The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2015

_____
The Honorable Kevin Gross
United States Bankruptcy Judge

**<u>EXHIBIT 1</u>**

**Settlement Agreement**

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Agreement") is made and entered into as of this date of February 4, 2015, by and among: (i) Source Home Entertainment, LLC, on behalf of itself, its affiliates, and its subsidiaries (collectively, "Source Distribution")[1], (ii) TEN: The Enthusiast Network Holding Co., LLC (f/k/a Source Media Holdco, LLC), on behalf of itself, its affiliates, and its subsidiaries (collectively, "Source Media"), (iii) Comag Marketing Group LLC, on behalf of itself, its affiliates, and its subsidiaries ("Comag"), (iv) TNG, GP on behalf of itself, its affiliates, and its subsidiaries ("TNG"), (v) Great Pacific Enterprises (New York), Inc., on behalf of itself, its affiliates, and its subsidiaries ("GPE"), (vi) Genera Solutions, LP on behalf of itself, its affiliates, and its subsidiaries ("Genera") and (vii) Coast to Coast Newsstand Services Partnership on behalf of itself, its affiliates, and its subsidiaries ("Coast to Coast," and collectively with Comag, TNG, GPE and Genera, the "Distributors," and together with Source Distribution and Source Media, the "Parties," and each, a "Party").

## Recitals

WHEREAS, (a) Source Interlink Distribution, LLC (f/k/a Chas. Levy Circulating Company, LLC) and Comag are parties to that certain Key Distributor Agreement, dated as of June 19, 2003 and that certain Direct Traditional Distributor Agreement, dated June 19, 2003 (together, including all amendments, exhibits, and modifications thereto, the "Domestic Distribution Agreement"), (b) Source Interlink International, Inc. and Comag are parties to that certain Distribution Agreement, dated as of February 1, 2007 (including all amendments, exhibits, and modifications thereto, the "International Distribution Agreement"), and (c) Comag sold goods to Retail Vision, LLC pursuant to the terms of that certain Comag Marketing Group Distributor Policy Manual (the "Retail Vision Contract," and together with the Domestic Distribution Agreement and the International Distribution Agreement, the "Distribution Agreements");

WHEREAS, pursuant to the Distribution Agreements, Comag acted as a distributor for certain publishers identified on Exhibit B hereto facilitating the distribution of print media to Source Distribution (collectively, the "Publishers");

WHEREAS, Source Interlink Companies, Inc. entered into that certain Guaranty of: (i) the Domestic Distribution Agreement dated as of December 19, 2006 (the "Domestic Guaranty") and (ii) the International Distribution Agreement, dated as of December 19, 2006 (the "International Guaranty," and together with the Domestic Guaranty, the "Guaranties");

WHEREAS, Source Interlink Companies, Inc. and Comag are parties to that certain sublease, dated as of June 27, 2006, with regard to certain premises located at 27500 Riverview Center Boulevard, Bonita Springs, Florida 34134 (including all amendments, exhibits, and modifications thereto, the "Sublease," and together with the Distribution Agreements and the Guaranties, the "Contracts");

---

[1] Notwithstanding the foregoing, and for the avoidance of doubt, the term "Source Distribution" shall not include International Circulation Services, Inc. ("ICS") and ICS shall not be a Party (as defined herein) to this Agreement in any form or fashion whatsoever.

**WHEREAS**, on June 23, 2014, Source Distribution (collectively, the "Debtors") filed voluntary petitions for relief commencing cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, on September 16, 2014, Source Interlink Distribution, LLC and Prologix Distribution Services (West), LLC, an affiliate of Comag Marketing Group, LLC, consummated the transactions set forth in that certain asset purchase agreement, dated as of September 4, 2014 (together with all related and ancillary agreements, exhibits, and attachments, the "Prologix APA");

**WHEREAS**, on July 11, 2014, Comag filed: (a) that certain Notice of Reclamation Demand [Docket No. 110] demanding reclamation of certain goods sold to Source Interlink Distribution, LLC in the ordinary course of Comag's business during the forty-five (45) days prior to filing of the chapter 11 petition of Source Interlink Distribution, LLC (the "SID Reclamation Claim"); and (ii) that certain Notice of Reclamation Demand [Docket No. 111] demanding reclamation of certain goods sold to Retail Vision, LLC in the ordinary course of Comag's business during the forty-five (45) days prior to filing of the chapter 11 petition of Retail Vision, LLC (the "Retail Vision Reclamation Claim," and collectively with the SID Reclamation Claim, the "Reclamation Claims");

**WHEREAS**, on October 2, 2014, Comag filed: (a) [Proof of Claim No. 767] asserting administrative and general unsecured claims against Retail Vision, LLC in the aggregate amount of $325,170.66 arising out of or relating to the Retail Vision Contract, (b) [Proof of Claim No. 768] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $27,532,161.94 arising out of or relating to the Domestic Distribution Agreement, and (c) [Proof of Claim No. 769] asserting administrative and general unsecured claims against Source Interlink International, Inc. in the aggregate amount of $8,698,819.11 arising out of or relating to the International Distribution Agreement (collectively, the "Comag Proofs of Claim");

**WHEREAS**, on October 3, 2014, TNG filed [Proof of Claim No. 791] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $86,801.75 (the "TNG Proof of Claim");

**WHEREAS**, on September 24, 2014, Coast to Coast filed: (a) [Proof of Claim No. 383] asserting administrative and general unsecured claims against Source Interlink International, Inc. in the aggregate amount of $63,076.52;  (b) [Proof of Claim No. 384] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $450,823.35; (c) [Proof of Claim No. 385] asserting administrative and general unsecured claims against Retail Vision, LLC in the aggregate amount of $29,841.26; (d) [Proof of Claim No. 386] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $628,141.73; and (e) [Proof of Claim No. 387] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $407,760.11 (collectively, the "Coast to Coast Proofs of Claim");

**WHEREAS**, on October 1, 2014, Coast to Coast amended the Coast to Coast Proofs of Claim by filing: (a) [Proof of Claim No. 483] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $914,720.13; (b) [Proof of Claim No. 485] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $687,549.19; (c) [Proof of Claim No. 487] asserting administrative and general unsecured claims against Source Interlink International, Inc. in the aggregate amount of $86,118.59; (d) [Proof of Claim No. 488] asserting administrative and general unsecured claims against Retail Vision, LLC in the aggregate amount of $30,992.31; and (e) [Proof of Claim No. 490] asserting administrative and general unsecured claims against Source Interlink Distribution, LLC in the aggregate amount of $700,621.48 (collectively, the "Amended Coast to Coast Proofs of Claim," and collectively with the Comag Proofs of Claim and the TNG Proof of Claim, the "Proofs of Claim");

**WHEREAS**, Source Distribution and Source Media have asserted various defenses, offsets, and counterclaims against the Distributors with respect to the Proofs of Claim, the Guaranties, and otherwise with respect to the business relationship between the Parties (collectively, the "Source Claims");

**WHEREAS**, on January 12, 2015, the Debtors filed the *Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 570] (as may be further amended, the "Plan"); and

**WHEREAS**, the Parties agree to fully and finally resolve the disputes related to and arising from the Contracts and the Proofs of Claim and the Source Claims pursuant to the terms and conditions set forth herein.

## Agreement

**NOW, THEREFORE**, in consideration of the premises, terms, conditions, and mutual releases contained herein, the Parties stipulate and agree:

1.    **Recitals.**    The foregoing recitals are hereby incorporated into and made an express part of this Agreement.

2.    **Conditions to Effective Date.**    Provided this Agreement shall not have been terminated pursuant to Section 8 hereof, the "Effective Date" shall be the first business day on which the Bankruptcy Court shall have entered an order authorizing and approving this Agreement that is materially consistent with the terms hereof and otherwise reasonably acceptable to the Parties (collectively, the "Settlement Order").

3.    **Bankruptcy Actions.**    Upon execution of this Agreement, each of the Parties shall take the following actions, as applicable, in connection with the Chapter 11 Cases:

    a.    Not later than three (3) business days after the date on which this Agreement has been executed, the Debtors shall file a motion seeking entry of the Settlement Order (the "Settlement Motion").

b.      Each of the Parties shall use commercially reasonable efforts to obtain entry of the Settlement Order, including by opposing and defending against any objections to the Settlement Motion made by any party and any appeals of the Settlement Order.

c.      The Distributors shall: (i) not oppose confirmation or consummation of the Debtors' Plan and (ii) be deemed to have cast a timely ballot voting in favor of the Debtors' Plan and not opting out of the Third Party Release (as defined in the Plan) set forth in the Plan; provided that the Plan is not amended or otherwise modified to be materially inconsistent with this Agreement and the Plan's treatment of the claims held by the Distributor Released Parties (as hereinafter defined).  To the extent that there is any inconsistency between the Third Party Release and this Agreement, the terms of this Agreement shall control.

4.      **Representations and Warranties.**  Each Party agrees, acknowledges, represents, and warrants to the other Parties that, subject to entry of the Settlement Order with respect to Source Distribution, it: (a) has all necessary right, title, and authority to enter into this Agreement and to bind itself, its successors, and its assigns to this Agreement; (b) is not subject to any statutory, contractual, or other obligation that may make the execution of this Agreement unlawful; and (c) has full knowledge of and has consented to this Agreement.

5.      **Releases.**  Subject to the occurrence of the Effective Date, and without further action by any Party, person, or entity:

a.      Each of the Distributors, on behalf of themselves, their affiliates, and their subsidiaries, shall release and discharge, and be deemed to have released and discharged, each of the Debtors and the Third Party Releasees (as defined in the Plan, but excluding the Revolving Credit Facility Agent, the Revolving Lenders, the Media Revolving Credit Facility Agent, the Media Revolving Lenders, and the Coral Springs Lender, each as defined in the Plan) (collectively the "Released Parties") and each of the Released Parties' respective current and former employees, officers, directors, members, managers, representatives, agents, subsidiaries, parents, affiliates, predecessors, successors, assignees, attorneys, advisors, financial advisors and other professionals, of and from any claim, retained action, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date arising from, based upon or relating to, in whole or in part, (i) the Contracts; (ii) the Reclamation Claims; (iii) the subject matter of, or the transaction or event giving rise to, any claim of any of the Distributors against the Debtors, Source Distribution, or Source Media, and any act, omission, occurrence or event in any manner related to the Chapter 11 Cases or such subject matter, transaction or obligation or (iv) the prior or existing business or operations of any of the Debtors, Source Distribution, or Source Media; provided that the foregoing release shall not (i) release: (A) the Amended Proofs of Claim (as defined below); or (B) claims relating to (1) any ongoing relationship between any of the Distributor Released Parties (as defined below) and Source Media unrelated to the Debtors' distribution business other than claims arising under the

4

Sublease and the Guaranties or (2) the Prologix APA, nor (ii) limit nor be deemed to limit Comag's rights to enforce this Agreement in accordance with its terms.

b.      Each of the Released Parties shall release and discharge, and be deemed to have released and discharged, each of the Distributors and their current and former employees, officers, directors, members, managers, representatives, agents, subsidiaries, parents, affiliates, predecessors, successors, assignees, attorneys, and other professionals (collectively, the "Distributor Released Parties"), of and from any claim, retained action, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date arising from, based upon or relating to, in whole or in part, (i) the Contracts; (ii) the subject matter of, or the transaction or event giving rise to, any claim of any of the Distributors against any of the Debtors, Source Distribution, or Source Media, and any act, omission, occurrence or event in any manner related to the Chapter 11 Cases or such subject matter, transaction or obligation or (iii) the prior or existing business or operations of any of the Debtors, Source Distribution, or Source Media; provided that the foregoing release shall not (i) release claims relating to (A) any ongoing relationship between any of the Distributor Released Parties and Source Media unrelated to the Debtors' distribution business other than claims arising under the Sublease and the Guaranties or (B) the Prologix APA; nor (ii) limit nor be deemed to limit Source Distribution's and/or Source Media's rights to enforce this Agreement in accordance with its terms.

c.      Each of Source Distribution and Source Media shall release and discharge, and be deemed to have released and discharged, each of the Publishers and their current and former employees, officers, directors, members, managers, representatives, agents, subsidiaries, parents, affiliates, predecessors, successors, assignees, attorneys, and other professionals (collectively, the "Publisher Releasees") of and from any claim, retained action, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date and solely arising from any amounts owed to and also owned by and for the ultimate benefit of Source Distribution related to retail display allowance programs (the "RDA Programs"); provided, that, notwithstanding anything herein to the contrary, and for the avoidance of doubt, the release set forth in this Section 5(c) shall not release nor be deemed to release any claims or causes of action by or on behalf of any third party not a Party to this Agreement, including any third party retailer, related to or arising from RDA Programs, including without limitation those RDA Programs in which Source Distribution acted as collection or "claiming" agent or service provider for such third party; provided, further, that to the extent any Publisher Releasee hereafter asserts a claim or cause of action against Source Distribution or Source Media that relates to a claim released hereby, such release shall be of no further force and effect as to such Publisher Releasee.

d.      EACH OF THE DISTRIBUTORS, SOURCE DISTRIBUTION, AND SOURCE MEDIA EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH

KE 34447763

THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, THEY HAVE CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH OF THE DISTRIBUTORS, SOURCE DISTRIBUTION, AND SOURCE MEDIA EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.  THE RELEASES CONTAINED IN THIS SECTION 5 ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

6.    **Amended Proofs of Claim**.  Notwithstanding the releases granted to Source Distribution pursuant to Section 5 hereof (but, for the avoidance of doubt, without in any way limiting the scope or effect of releases granted to any of the other Released Parties), the Proofs of Claim shall be deemed amended to assert general unsecured claims solely against those certain Debtors and in those certain amounts as set forth on **Exhibit A** hereto (collectively, the "Amended Proofs of Claim").   Subject to the occurrence of the Effective Date, Source Distribution agrees that the Amended Proofs of Claim shall be allowed as general unsecured claims solely against the applicable Debtor set forth on **Exhibit A** hereto, without objection, defense, offset, or counterclaim.  For the avoidance of doubt, nothing in this Section 6 shall limit nor be deemed to limit the scope or effect of the releases granted by the Distributors to Source Media pursuant to Section 5 hereof.

7.    **Effectiveness.**  This Agreement shall be effective and binding upon the Parties upon the later of:  (a) entry of the Settlement Order; and (b) confirmation of the Plan.

8.    **Termination.**    Provided that such Party is not otherwise in breach of its obligations hereunder, and without limiting the rights of any non-breaching Party pursuant to Section 12 hereof, a Party may terminate this Agreement upon three (3) business days written notice delivered in accordance with Section 15 hereof upon the occurrence, and during the continuation, of a material breach by one or more Parties of their obligations under this Agreement; provided that in no event shall any such termination relieve a Party hereto from liability or its obligations under this Agreement for its breach or non-performance of its obligations hereunder prior to the date of such termination.

9.    **Good-Faith Cooperation; Further Assurances**.  The Parties shall cooperate with each other in good faith in respect of matters concerning the implementation and consummation of this Agreement.

6

10.  **Third Party Beneficiaries.**  This Agreement is not intended for the benefit of any person other than the Parties, and no such other person will be deemed to be a third party beneficiary hereof.

11.  **Governing Law.**  All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement will be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law rules or provisions that would cause the application hereto of the laws of any jurisdiction other than the State of New York.

12.  **Specific Performance.**  The Parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

13.  **Waiver of Jury.**  In any court proceeding arising out of or relating to this Agreement, each Party hereby waives any right to trial by jury.

14.  **Jurisdiction.**  Each of the Parties hereby submit to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising out of or related to this Agreement, and each Party agrees not to commence any action, suit, or proceedings relating thereto except in the Bankruptcy Court.  In the event that the Bankruptcy Court lacks jurisdiction to hear a proceeding arising out of or related to this Agreement, the Parties agree that the exclusive jurisdiction for purposes of any proceeding arising out of or related to this Agreement shall be the United States District Court for the District of Delaware or the United States District Court for the Southern District of New York, and each Party hereby submits to the exclusive jurisdiction of those courts for purposes of any such proceeding.

15.  **Notice.**  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:  (a) when delivered by hand (with written confirmation or receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or electronic mail ("e-mail") of a portable document format ("PDF") document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective Parties at the following addresses (or at such other address for a Party as shall be specified in a notice given in accordance with this Section 15):

If to Source Distribution:

Source Home Entertainment, LLC
27500 Riverview Center Blvd.
2nd Floor
Bonita Springs FL 34134

7

with copies to:

Kirkland & Ellis LLP
300 North LaSalle St.
Chicago, Illinois 60654
E-mail:    david.eaton@kirkland.com, michael.weitz@kirkland.com
Facsimile:  (312) 862-2200
Attention:   David L. Eaton, Esq. and Michael W. Weitz, Esq.

If to Source Media:

TEN: The Enthusiast Network Holding Co., LLC
831 South Douglas St.
El Segundo, CA 90245

with copies to:

Latham & Watkins LLP
355 S. Grand Avenue
Los Angeles, California 90071-1560
E-mail:    wayne.s.flick@lw.com, kim.posin@lw.com
Facsimile:  (213) 891-8763
Attention:   Wayne S. Flick, Esq. and Kimberly A. Posin, Esq.

If to Comag:

Comag Marketing Group LLC
155 Village Boulevard – 3rd Floor
Princeton, NJ 08540
Attention: Jay W. Felts, President
E-mail: jfelts@i-cmg.com
Facsimile: (609) 524-1629

with copies to:

K&L Gates LLP
214 North Tryon St., Suite 4700
Charlotte, NC 28202
E-mail:    john.culver@klgates.com, john.gardner@klgates.com
Facsimile:  704.353.3153
Attention:   John H. Culver, Esq. and John R. Gardner, Esq.

If to TNG:

TNG, GP
18th Floor
1067 West Cordova Street

8

Vancouver BC V6C 1C7
Canada
c/o Nicolas Desmarais

with copies to:

K&L Gates LLP
214 North Tryon St., Suite 4700
Charlotte, NC 28202
E-mail:       john.culver@klgates.com, john.gardner@klgates.com
Facsimile:  704.353.3153
Attention:   John H. Culver, Esq. and John R. Gardner, Esq.


If to Coast to Coast:

Coast to Coast Newsstand Services Partnership
5230 Finch Avenue East
Suite 1
Toronto, Ontario M1S 4Z9
Canada

with copies to:

K&L Gates LLP
214 North Tryon St., Suite 4700
Charlotte, NC 28202
E-mail:       john.culver@klgates.com, john.gardner@klgates.com
Facsimile:  704.353.3153
Attention:   John H. Culver, Esq. and John R. Gardner, Esq.


If to GPE:

Great Pacific Enterprises (New York), Inc.
18th Floor
1067 West Cordova Street
Vancouver BC V6C 1C7
Canada
c/o Nicolas Desmarais


with copies to:

K&L Gates LLP
214 North Tryon St., Suite 4700
Charlotte, NC 28202
E-mail:       john.culver@klgates.com, john.gardner@klgates.com

9

Facsimile:  704.353.3153
Attention:   John H. Culver, Esq. and John R. Gardner, Esq.

If to Genera:

Genera Solutions, LP
13680 Ballantyne Corporate Place, Suite 400
Charlotte, NC 28277
c/o John Seebach, President
Phone:  980-233-4411
Fax:  980-233-4577
Email:  jseebach@generasolutions.com

with copies to:

K&L Gates LLP
214 North Tryon St., Suite 4700
Charlotte, NC 28202
E-mail:      john.culver@klgates.com, john.gardner@klgates.com
Facsimile:  704.353.3153
Attention:  John H. Culver, Esq. and John R. Gardner, Esq.


16.    **No Strict Construction.**  This Agreement shall be deemed to have been jointly drafted by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any party.

17.    **Severability.**    The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement, which will otherwise remain in full force and effect.

18.    **Entire Agreement; Amendment; Waiver.**  (a) This Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  (b) This Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by each of the Parties.  (c) The terms and conditions (including the condition set forth at Section 2 hereof) hereof may not be waived except in a writing executed by each of the Parties.

19.    **No Liability.**  It is understood and agreed by the Parties that this Agreement represents a settlement and compromise of the claims described in Section 5 hereof and neither this Agreement itself, any of the payments or covenants described herein, nor anything else connected with this Agreement is to be construed as an admission of fault or liability.

20.    **Counterparts.**  This Agreement may be executed in separate counterparts, each of which will be deemed to be an original and all of which taken together will constitute one and the same agreement.  Signed signature pages may be transmitted by facsimile or e-mail, and any such signature shall have the same legal effect as an original.

21.     **Headings.**  The headings in this Agreement are for purposes of convenience only, and will not be deemed to amend, modify, expand, limit, or in any way affect the meaning of any of the provisions hereof.

[SIGNATURE PAGE FOLLOWS]

11

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first written above.

**SOURCE DISTRIBUTION:**

**SOURCE HOME ENTERTAINMENT, LLC**, on behalf of itself, its affiliates, and its subsidiaries

By: _____

Name:

Its:

**SOURCE MEDIA:**

**TEN: THE ENTHUSIAST NETWORK HOLDING CO., LLC (F/K/A SOURCE MEDIA HOLDCO, LLC)**, on behalf of itself, its affiliates, and its subsidiaries

By: _____

Name:

Its:

**COMAG:**


**COMAG MARKETING GROUP LLC**, on behalf
of itself, its subsidiaries, and its affiliates


By: _____
Name:
Its:

**TNG:**

**TNG, GP**, on behalf of itself, its subsidiaries, and its affiliates

By: _____
Name:
Its:

**GPE:**


**GREAT PACIFIC ENTERPRISES (NEW YORK) INC.**, on behalf of itself, its subsidiaries, and its affiliates


By: _____
Name:
Its:

**GENERA:**

**GENERA SOLUTIONS, LP**, on behalf of itself, its subsidiaries, and its affiliates

By: _____
Name:
Its:

**COAST TO COAST:**

**COAST TO COAST NEWSSTAND SERVICES PARTNERSHIP**, on behalf of itself, its subsidiaries, and its affiliates

By: _____
Name:
Its:

## Exhibit A

### Amended Proofs of Claim

| Proof of Claim No. | Creditor | Debtor | Priority | Amount |
|---|---|---|---|---|
| 767 | Comag Marketing Group, LLC | Retail Vision, LLC | General Unsecured | $0 |
| 768 | Comag Marketing Group, LLC | Source Interlink Distribution, LLC | General Unsecured | $15,808,984.18 |
| 769 | Comag Marketing Group, LLC | Source Interlink International, Inc. | General Unsecured | $0 |
| 791 | TNG, GP | Source Interlink Distribution, LLC | General Unsecured | $0 |
| 483 | Coast to Coast Newsstand Services Partnership | Source Interlink Distribution, LLC | General Unsecured | $0 |
| 485 | Coast to Coast Newsstand Services Partnership | Source Interlink Distribution, LLC | General Unsecured | $0 |
| 487 | Coast to Coast Newsstand Services Partnership | Source Interlink International, Inc. | General Unsecured | $0 |
| 488 | Coast to Coast Newsstand Services Partnership | Retail Vision, LLC | General Unsecured | $0 |
| 490 | Coast to Coast Newsstand Services Partnership | Source Interlink Distribution, LLC | General Unsecured | $459,657.12 |

## Exhibit B

**List of Publishers**

[See Attached]

| Publishers | |
|---|---|
| HEARST COMMUNICATIONS INC | |
| BAUER MAGAZINE LIMITED PARTNERSHIP | |
| HEINRICH BAUER NORTH AMERICA, INC. | |
| BAUER PUBLISHING COMPANY, LP | |
| CONDE NAST | |
| PENNY PUBLICATIONS, LLC | |
| HEINRICH BAUER PUBLISHING, LP | |
| READERS DIGEST D/B/A REIMAN MEDIA GROUP | |
| CONSUMERS UNION OF US INC. | |
| FOOD NETWORK MAGAZINE, LLC | |
| HGTV MAGAZINE, LLC | |
| READER'S DIGEST D/B/A PEGASUS SALES, INC | |
| TV GUIDE MAGAZINE, LLC | |
| MARIE CLAIRE INC | |
| BONNIER CORPORATION | |
| MAXIM INC. | |
| CRUZ BAY PUBLISHING | |
| COUNTRY SAMPLER, LLC | |
| ET PUBLISHING INTERNATIONAL, LLC | |
| D.M.D. PUBLICATIONS, INC. | |
| F+W MEDIA, INC. DBA INTERWEAVE | |
| W/W TWENTYFIRST CORPORATION | |
| HARVARD BUSINESS SCHOOL PUBLISHING CORPORATION | |
| AMERICAN CITY BUSINESS JOURNALS, INC. | |
| NEWSWEEK, LLC | |
| HEMMINGS MOTOR NEWS | |
| TAM COMMUNICATIONS | |
| BLOOMBERG BUSINESSWEEK | |
| EMMIS PUBLISHING, LP | |
| ESPN MAGAZINE, LLC | |
| KIPLINGER WASHINGTON EDITORS INC | |
| CITIES WEST PUBLISHING, INC. | |
| ANNIE'S PUBLISHING, LLC | |
| ATHLON SPORTS COMMUNICATIONS, INC. | |
| USFRSC, INC | |
| METRO CORP | |

| | |
|---|---|
| HIGHLIGHTS FOR CHILDREN, INC. | |
| EAGLE NEW MEDIA INVESTMENTS, LLC | |
| IDG CONSUMER & SMB, INC. | |
| ARIZONA HIGHWAYS | |
| THE WEEKLY STANDARD, LLC | |
| FUTURE U.S., INC. | |
| GREAT LAKES PUBLISHING COMPANY | |
| CARUS PUBLISHING CORPORATION | |
| BELVOIR MEDIA GROUP, LLC | |
| THE BRITISH CONNECTION, INC. | |
| GROUP ONE ENTERPRISES, INC. | |
| NEW JERSEY MONTHLY, LLC | |
| THE CHELSEA MAGAZINE COMPANY, LTD | |
| SIMPLY LIVING PUBLICATIONS, LLC | |
| STREET & SMITH'S SPORTS GROUP | |
| COUNCIL ON FOREIGN RELATIONS | |
| HALCYON MEDIA, LLC | |
| WDDTY USA, LLC | |
| NATIONAL REVIEW INC | |
| ARMCHAIR GENERAL, LLC | |
| NATIONAL WILDLIFE FEDERATION | |
| PACIFIC BASIN COMMUNICATIONS, LLC | |
| HOMESTYLES MEDIA, INC | |
| MADAVOR MEDIA, LLC | |
| TODAY MEDIA, INC. | |
| PARAGRAPH PUBLISHING, LTD | |
| MANN MEDIA, INC | |
| CENTERS FOR SPIRITUAL LIVING | |
| ART NEWS | |
| H.O. ZIMMAN, INC. | |
| EBNER PUBLICATIONS INTERNATIONAL, INC. | |
| AMERICAN SOCIETY OF LANDSCAPE ARCHITECTS | |
| MCGRAW-HILL CO INC dba MCGRAW-HILL CONSTRUCTION | |
| US NAVAL INSTITUTE | |
| DUNFEY PUBLISHING COMPANY, INC. | |
| BOOZ AND COMPANY (NA), INC. | |
| AMERICAN ARTS MEDIA, INC. | |

| | |
|---|---|
| THE BRITISH CONNECTION, INC. - FRANCE | |
| LATINA MEDIA VENTURES LLC | |
| AMERICAN CRAFT COUNCIL | |
| OGDEN PUBLICATIONS, INC | |
| BAYVIEW PUBLISHING, INC. DBA STITCHWORLD | |
| THE RODDER'S JOURNAL, INC. | |
| MODERN FARMER MEDIA, LLC | |
| D MAGAZINE PARTNERS, LP | |
| FOR A SONG MEDIA, LLC | |
| WHAT'S UP?, INC. | |
| AFAR MEDIA, LLC | |
| MIT SLOAN MANAGEMENT REVIEW | |
| IRON MAN MAGAZINE | |
| TAYLOR & FRANCIS GROUP, LLC | |
| COMMENTARY, INC. | |
| SAGACITY MEDIA, INC. | |
| THE AMERICAN INTEREST, LLC | |
| ROTATING MASS MEDIA, LTD. | |
| FILM SOCIETY OF LINCOLN CENTER, INC. | |
| SPIRITUALITY&HEALTH MEDIA, LLC | |
| HOME PLANNERS LLC | |
| OPEN SKY MEDIA, INC. | |
| HEISE ZEITSCHRIFTEN VERLAG GMBH & CO. KG | |
| TODAY MEDIA - WESTCHESTER | |
| DAVLER MEDIA GROUP, LLC | |
| VEGAN HEALTH & FITNESS MAGAZINE, LLC | |
| SEATTLE METROPOLITAN, LLC | |
| WORLD AFFAIRS INSTITUTE | |
| BLUE & GRAY ENTERPRISES, INC. | |
| PIERCE PUBLISHING, LLC | |
| INTERNATIONAL SCULPTURE CENTER | |
| 5280 PUBLISHING, INC | |
| LUCKY PEACH, LLC | |
| BELLEROPHON PUBLICATIONS, INC | |
| THE OPEN STUDIOS PRESS INC | |
| CHINA NEWSWEEK CORPORATION | |
| THE FOUNDATION FOR NATIONAL PROGRESS | |

| | |
|---|---|
| FOUNDATION FOR CULTURAL REVIEW | |
| PORTLAND MONTHLY, LLC | |
| ORNAMENT | |
| TODAY MEDIA - HUDSON VALLEY | |
| C PUBLISHING, LLC | |
| GOOD WORLDWIDE, LLC | |
| BUSINESS JOURNAL PUBLICATIONS, INC. | |
| SOCIETY OF NORTH AMERICAN GOLDSMITHS | |
| ROADRUNNER PUBLISHING | |
| MASTERPIECE LITHO, INC. | |
| IEEE, INC. | |
| PENINSULA PUBLISHING, LLC | |
| GULFSHORE MEDIA, LLC | |
| THE TRICYCLE FOUNDATION, INC. | |
| STORM MOUNTAIN PUBLISHING COMPANY, INC. | |
| LIGHTHOUSE MEDIA SOLUTIONS, INC. | |
| ST. LOUIS MAGAZINE, LLC | |
| HARVARD INTERNATIONAL RELATIONS COUNCIL | |
| INSTITUTE OF RELIGION & PUBLIC LIFE | |
| AMERICAN INDIAN ART | |
| ATOMIC RANCH, INC. | |
| NATURAL HISTORY MAGAZINE, INC. | |
| CERAMIC ART | |
| STACKPOLE MAGAZINES, INC | |
| MAY MEDIA GROUP, LLC | |
| JUSTEEN, LLC D/B/A JUSTINE MAGAZINE | |
| AMERICAN AGORA FOUNDATION | |
| CHEESETOAST, INC. | |
| DOT429, INC. | |
| VMR INTERNATIONAL INC | |
| PLAYBILL, INCORPORATED | |
| EXPLORER MEDIA & MARKETING, INC. | |
| READER'S DIGEST ASSC (CANADA) ULC | |
| FLORIDA HOME MEDIA, LLC | |
| FLATT/ART VUE NYC, LLC. | |
| MCSWEENEY'S PUBLISHING, LP | |
| GLOBAL LIGHT MEDIA, LLC | |

| | |
|---|---|
| ASIAN ART NEWS | |
| SPOONER INDUSTRIES, INC. | |
| SM LIVING, LLC | |
| AT HOME TENNESSEE MAGAZINE, LLC | |
| ZINK | |
| MAINE BOATS, HOMES & HARBORS, INC. | |
| PORTLAND BRIDE & GROOM, LLC | |
| MORRIS VISITOR PUBLICATIONS, LLC | |
| TRILOGY MARKETING, INC. | |
| ELITE MEETINGS INTERNATIONAL, INC. | |
| MEDIA TWO, INC. | |
| TOURING & TASTING, LLC. | |
| CQ COMMUNICATIONS | |